[ASSIGNMENT FOR THE BENEFIT OF CREDITORS.   EVIDENCE.]

## BROOKS v. MARBURY.

A debtor has a right to prefer one creditor to another in payment ; and it is no objection to the validity of an assignment for that purpose, that it was made by the grantor, and received by the grantee, as trustee, in the hope and expectation, and with a view of preventing prosecution for a felony connected with his transactions with his creditors ; if the preferred creditors have done nothing to excite that hope, and the assignment was made without their knowledge or concurrence at the time of its execution, and without a knowledge of the motives which influenced the assignor, or was not afterwards assented to by them under some engagement express or implied to suppress or forbear the prosecution.

An assignment for the benefit of preferred creditors is valid, although their assent is not given at the time of its execution, if they subsequently assent in terms, or by actually receiving the benefit of it.

It is no objection to such an assignment, that it defeats all other creditors of their legal remedies, even if amounting to a majority in number and value, unles there be some express provision of a bankrupt law to invalidate the deed.

*Quære*, How far, and under what circumstances, the possession of the property assigned to trustees for the benefit of creditors, continuing in the grantor, will invalidate the assignment.

A certified copy of a registered deed cannot be given in evidence, if within the power of the party claiming under it to produce the original, unless there be some express provision by statute making an authenticated copy evidence.

1826.

Brooks
v.
Marbury.

ERROR to the Circuit Court for the District of Columbia.

This is the same case which is reported *ante*, vol. VII. p. 556. The judgment of the Court below was then reversed, and a *venire de novo* awarded. At the new trial, exceptions were taken to the instructions given by the Court to the jury ; and the cause having again been brought before this Court for revision, was argued by Mr. *Jones* and Mr. *Coxe*, for the plaintiff,[a] and by the *Attorney General* and Mr. *Key*, for the defendant.[b]

Mr. Chief Justice MARSHALL delivered the opinion of the Court.

*Feb. 10th.*

This case depends on the validity of a deed executed by Richard H. Fitzhugh on the 31st of December, 1819, purporting to convey to the defendant, for the use of certain enumerated creditors, his slaves, goods, and debts, which deed

---

*a* They cited 6 *Harris & Johns. Rep.* 234.  Hamilton v. Russell, 1 *Cranch's Rep.* 310.  Hildreth v. Sands, 2 *Johns. Ch. Cas.* 35.  Edwards v. Harlin, 2 *Term Rep.* 587.

*b* They cited Marbury v. Brooks, 7 *Wheat. Rep.* 556.  Wheaton v. Sexton 4 *Wheat. Rep.* 503.  Astor v. Wells, 4 *Wheat. Rep.* 466.  Sands v. Hildreth, 14 *Johns. Rep.* 493.

was recorded in the record book for the county in which the parties resided, on the 3d of January, 1820. Immediately after executing this deed, the said Fitzhugh absconded; and on the 10th of February thereafter, the plaintiff sued out an attachment to attach his effects in the hands of the said Marbury. The garnishee denies that he has any effects of the said Fitzhugh in his hands which can be affected by the attachment, the same not being sufficient to satisfy the creditors enumerated in the deed which has been mentioned. The plaintiff contests the validity of that deed. The jury found a verdict in favour of its validity, upon which the Circuit Court rendered a judgment against the plaintiff, which he has brought before this Court by a writ of error. In the course of the trial, exceptions were taken by the counsel for the plaintiff to some opinions given by the Court, and to its refusal to give others for which they applied. The correctness of the opinions given, and of the refusal of those not given, will now be considered.

On the trial, the garnishee offered to read from the record books of the county, the memorial of the deed which has been mentioned, to which the plaintiff objected, and insisted that the original ought to be produced. The Court overruled this objection, and the copy was read. To this opinion of the Court the plaintiff's counsel excepted; and he now insists, that there is no law of the State of Maryland which directs a deed of the description of that of which a copy was read in this case, to be recorded; and that, if there

were such a law, still the original ought to be produced, if within the power of the party claiming under it

The act of 1729, ch. 8. enacts, " that from and after the end of this session of Assembly, no goods or chattels whereof the vendor, mortgagor, or donor, shall remain in possession, shall pass, alter, or change, or any property thereof be transferred to any purchaser, unless the same be by writing, and acknowledged before one provincial Justice of the county where such seller, mortgagor, or donor, shall reside, and be within twenty days recorded in the records of the same county."

The counsel for the plaintiff insists, that this law directs the recording of those deeds only which convey property of which the donor remains in possession, and that the possession in this case must be supposed to have passed with the deed, unless the contrary be shown.

This objection is not without its weight. It, however, does not appear to have been suggested at the trial, and probably did not occur to the Court or the parties at the time, or it might have been shown that in point of fact the possession was not immediately changed. Since, however, the admission of the evidence was not made to depend on the circumstance of possession, this objection cannot be overlooked.

*Quare,* How far the fact of possession not having accompanied the deed in this case, (of an assignment to trustees for the benefit of creditors,) would invalidate it within the authority of *Hamilton* v. *Russel,* (1 *Cranch's Rep.* 310.)

It has been, also, contended by the plaintiff, that if possession did not accompany and follow the deed, it is void as to creditors under the au-

1826.  thority of the case of *Hamilton* v. *Russel*, (1 *Cranch's Rep.* 310.). On this point, it may be proper to observe, that in *Hamilton* v. *Russel*, the deed purported to convey the property to the vendee for his own immediate use, and the subsequent continued possession of the vendor was incompatible with the instrument. This is a deed of trust, not for the benefit of the person to whom it is made, but for the benefit of certain enumerated creditors. The continuance of the possession with the donor until the trust can be executed, may not be so incompatible with the deed as to render it absolutely void under all circumstances. The Court does not mean to express any opinion on this point, farther than to say, that it is not supposed to be decided in *Hamilton* v. *Russel.*

Brooks
v.
Marbury.

Copy of the deed inadmissible in evidence.

Should the act of 1729 be considered as applying to this case, the question would then arise, whether the copy of a deed be admissible where the original is in the power of the party offering the copy. This would be contrary to the great principle, that the best evidence which the nature of the case admits of ought to be required. But, it has been said, in answer to this objection, that the Courts of Maryland have so decided. This Court will certainly respect the decisions made in the State; but we are not satisfied that the principle is settled. In the case cited from 6 *Harris & Johnson*, 234. the question arose on the conclusiveness, not on the admissibility, of the evidence. The suit was on an administrator's bond, and Mr. Mc Gruder said, in argument, that

the law requires such a suit to be brought on a copy of the bond. Of course, such copy must be admissible. It is true, that in deciding against its conclusiveness, the Court said, generally, that a copy is *prima facie* evidence in all cases where the law directs an instrument of writing to be recorded. This is the assertion of a general principle, not the construction of a particular act, and we understand that the Courts of Maryland have not adhered uniformly to the principle thus laid down. There is some contrariety of opinion on this point; but the majority of the Court conceives that the copy should not have been read, without showing that the original was not in the power of the party.

Although the judgment of the Circuit Court must be reversed for error in admitting improper testimony, yet, as the record presents other points which must again arise, and which have been fully argued, this Court will proceed to indicate its opinion on those points.

The deed having been admitted, its validity came on to be discussed.

Richard H. Fitzhugh had made notes to a very considerable amount, and had forged the names of endorsers thereon; after which, he had discounted them in the banks of Georgetown, and of this city. The proceeds of the deed were to be applied, in the first instance, to the payment of these forged notes; after which, the residue was for the benefit of the creditors generally. It is understood that there is no residue; and that if the deed be valid, the debts due to the favoured

*Margin notes: 1826. Brooks v. Marbury. Question as to the validity of the assignment as against other creditors.*

creditors will be paid to the exclusion of all others; if it be invalid, the whole proceeds must be paid to the attaching creditors in the order in which they stánd, to the exclusion of those for whose benefit the deed was made, and of those attaching creditors also for whom nothing shall remain after satisfying prior attachments. It is, then, a mere question of legal preference, unmixed with any equitable considerations whatever.

It is contended by the plaintiff, that the deed is void, because the consideration is illegal, it being given for the purpose of suppressing a prosecution for a felony.

The testimony in the cause was abundantly sufficient to justify the jury in drawing the inferences, that the deed was executed by Fitzhugh in the hope that payment of the forged notes would enable him to escape a prosecution; and that the same hope was entertained by Marbury. It is not doubted, that had there been any previous communication with the banks which led to this hope, or any evidence that the prosecution was not instituted in consequence of the notes being paid, or that their payment was to depend on a forbearance to prosecute, the deed would have been against the policy of the law, and utterly void. But, the evidence stated in the case, and the opinions which were given, as well as those which were refused by the Court, present the question whether, assuming the entire innocence of the favoured creditors, the deed to Marbury is annulled by any hope which might have lurked in the bosoms of both the grantor and

grantee, that the payment of the notes it was intended to secure, might save Fitzhugh from a prosecution.

This case has once already been before this Court, on a writ of error to a judgment of the same Circuit Court, made in favour of the attaching creditor, which judgment was reversed.[a] But, although the facts were the same, the opinions on which the case depended were essentially different from those which are now to be considered. The case wears a new aspect in many respects, and stands on principles which are not absolutely the same. Although any point already determined, will not be changed lightly or inconsiderately, yet, we think, that the decision in the former case does not positively determine this.

The first exception is to an opinion given on the prayer of the defendant. The Court instructed the jury, " that if they believed, from the evidence, that Richard H. Fitzhugh executed the deed in question, and William Marbury accepted the same, without the concurrence or knowledge of the banks mentioned in the deed; and that the said banks assented to the same without any engagement, express or implied, to suppress or forbear the prosecution of the said Fitzhugh, then the plaintiff is not entitled to recover." To this instruction given by the Court to the jury, the counsel for the plaintiff excepted.

*a 7 Wheat. Rep. 556.*

The case assumed is, that the deed was executed "without the concurrence or kn wledge of the banks." At the time of its execution, then, they cannot be considered as having in any manner participated in it. The terms exclude any agency whatever on their part in obtaining it. The case proceeds, " and that the said banks assented to the same without any engagement, express or *implied*, to suppress or *forbear* the prosecution of the said Fitzhugh." This branch of the statement supposes equal innocence on the part of the banks when the deed was accepted. The case put is, that they had entered into no express or implied engagement to suppress or forbear the prosecution. This certainly left the jury at full liberty to infer an understanding between Marbury and the banks. which is an implied engagement, from the fact that they forbore to prosecute when it was in their power to do so, if such was the fact. It left the jury at full liberty to draw this inference from any language or conduct of the favoured creditors, either before or after the deed was accepted, which, in their opinion, would justify it. If, then, the Court erred in giving the instruction, that, in such a state of things, the plaintiff was not entitled to recover, it is because the belief on the part of Fitzhugh and Marbury, that the payment of the forged notes might save Fitzhugh from a prosecution, although such a belief was unauthorized by those for whose benefit the deed was made, and was not communicated to them, vitiates the conveyance, so that nothing passed by it.

The general principle, that notice to a trustee, or an agent, is notice to the *cestui que trust*, or to his employer, is too well settled to be drawn into question. But, the case put to the Court, does not suppose Marbury to be the trustee or agent of the creditors. He is the trustee and agent of Fitzhugh, to perform an act for him which his situation disabled him from performing in person. This act was entirely consistent with law; it was to sell his property, and apply the proceeds to the payment of creditors of a particular description in the first instance, and, afterwards, to creditors generally. His right to give the preference is not questioned, nor is the validity of the consideration, so far as it moved from the creditors, infected with any vicious principle, or in any manner brought into doubt. A contract, the consideration of which is the compounding of felony, is admitted to be void; and if this conveyance had been induced by such composition, or the promise of it, or had depended on it, the fact that it was made for the payment of debts justly due, would not have secured it from the effect of this contaminating ingredient. But no such ingredient enters into the case. Every thing on the part of the creditors, or of any person acting for them, or by their authority, is unexceptionably fair and legal. The plaintiffs rest their claim to set aside this deed, on the expectations which Fitzhugh and his agent had formed of its operation on the conduct of the creditors, although the proceedings under the deed were not to be influenced by the success or fail-

1826.

Brooks
v.
Marbury.

Notice to a trustee is notice to the *cestui que trust*; but, in this case, the assignee was the trustee, not of the creditors, but of the grantor.

ure of their hopes.   The case put in this prayer for the instruction of the Court, does not, indeed, suppose such expectations; but as it does not exclude them, and as the instruction to the jury is, that the plaintiff cannot recover, whatever inferences they may draw from the testimony, not inconsistent with those which the Court supposes to decide the cause, it becomes necessary to inquire whether these expectations vitiate the deed.

It cannot be questioned, that Fitzhugh might have sold his property, and paid the proceeds to the banks, and that such sale and payment would not have been vitiated by any expectation he had formed that it might save him from a prosecution.   Had he communicated this expectation to the purchaser, told him the use he intended to make of the money, and that his motive for preferring the holders of these forged notes to other creditors, was the hope, that on receiving payment, they might be less active in the prosecution, would this have rendered the sale a nullity? We cannot conceive that such a communication would have affected the transaction.

Had Fitzhugh conveyed his property directly to the banks, in trust, to sell it for the payment of *these* notes in the first instance, so that their right became absolute, without any engagement, express or implied, to suppress or forbear a prosecution, and without any previous or simultaneous communication with them, would the hope cherished in his own mind, that this payment might operate in his favour with them, avoid the

transaction? We can perceive no reason for giving such an effect to a latent hope which could have no influence on those to whom it was not communicated. If, then, this very transaction, passing directly between Fitzhugh and the banks, would have been legal, why should it be rendered illegal by the agency of Marbury, who was employed by Fitzhugh, and who was impelled by the same motives which influenced his principal? If Fitzhugh might have conveyed directly to the banks, with power to sell for their own benefit, why might he not convey to Marbury, with power to sell, and pay the money to the banks? If a real distinction exists between the cases, we are incapable of perceiving it.

The preference of creditors of a particular description, over others, being one which a debtor has a right to make, the sale of his property, and the payment of the proceeds to such favoured creditors, being an act which the debtor may perform by himself or his agent, we cannot conceive, that the motives which may have induced the preference, although communicated to the agent, can, in reason, affect the transaction, provided nothing has occurred on the part of the creditors, which is in any degree exceptionable, either in law or justice.

It has been said, that this deed, as between Fitzhugh and Marbury, is fraudulent, and that no person, however innocent, can take any thing under a fraudulent deed.

This proposition is certainly laid down too

broadly. That deeds which are absolutely void cannot be the foundation of title, or that a *cestui que trust* can claim nothing under a deed which is fraudulently obtained by his trustee, or agent, acting by his authority, need not be controverted ; but that a principal and his agent, meditating, as the probable consequence of their act, an object forbidden by the policy of the law, cannot, because the one has conveyed to the other in furtherance of this design, sell to a fair creditor, or for the benefit of a fair creditor, not participating in their views, or cognizant thereof, is more than this Court is prepared to say.

*Hildreth v. Sands,* (2 *Johns. Ch. Rep.* 35.) reviewed, and its dicta reconciled with the present case.

The counsel for the plaintiff suppose, that this proposition is sustained by the opinion of Chancellor Kent, in *Hildreth* v. *Sands and Others,* (2 *Johns. Ch. Rep* 35.) Any opinion expressed by that Judge is, undoubtedly, entitled to great attention, and will be highly respected by this Court. In that case, the Chancellor said, " If the deed is admitted to be fraudulent on the part of Comfort Sands, the grantor, there would be difficulty in allowing the deed to stand, even if the grantee was, as he alleges, innocent of the fraud." 

This expression of Chancellor Kent must, undoubtedly, be understood in reference to the case in which it was used. He has not said, nor could he mean to say, that in every possible case, a fraudulent intent on the part of the grantor would avoid a deed to a *bona fide* purchaser for a full and valuable consideration, having no knowledge of the fraud. He has only said, that if the

particular deed in that case be admitted to be fraudulent on the part of the grantor, there would be difficulty in allowing it to stand, even if the grantee was ignorant of the fraud. An opinion in a particular case, founded on its special circumstances, is not applicable to cases under circumstances essentially different. In the case in 2 *Johns. Ch.* a deed from Comfort Sands, to his brother Robert, was declared to be fraudulent and void, because, 1. The consideration was inadequate. 2. There was no proof that the consideration was paid or secured. 3. The grantor continued in possession, exercising acts of ownership. 4. That there were many circumstances attending the execution of the deed, showing that it was not a *bona fide* sale. The bill had been taken for confessed against the grantor, but the grantee had denied fraud. In this case, the Chancellor said, that if this deed is admitted to be fraudulent on the part of the grantor, there would be difficulty in allowing it to stand, even if the grantee was innocent. But, in this case, the grantor and grantee were the sole parties. The vice of the deed was in its consideration, in its not being intended or used as a *bona fide* transfer of other property, and in other circumstances, in all which the grantee necessarily participated. The Chancellor did not decree, nor did he think himself justifiable in decreeing, against the grantee, on a bill taken for confessed against the grantor. Yet, this circumstance established the fraud of the grantor as completely as it could be established by testimo-

ny. Why did he not proceed upon this fact. The reason is, that it would not sustain a decree against the grantee. We think that this declaration has been pressed much farther in argument than the eminent Judge who made it would be willing to carry it.

The opinion, that Chancellor Kent intended to confine this observation to the particular case, is strengthened by a reference to the authority on which he relies. He cites *Huguenin* v. *Baseley*, (14 *Vesey's Rep.* 273.) in which case the Lord Chancellor said, " With regard to the interests of the wife and children of the defendant, there was no personal interference on their part in the transactions that have produced this suit. If, therefore, their estates are to be taken from them, that relief must be given with reference to the conduct of other persons ; and I should regret that any doubt could be entertained whether it is not competent to a Court of equity to take away from third persons the benefit which they have derived from the fraud, imposition, or undue influence of others."

These expressions were used in a case in which Baseley had obtained from Mrs. Huguenin, by means which the Court pronounced fraudulent, a settlement of her estate, after her death, upon himself, his wife, and children. No consideration moved from the wife and children. They were volunteers claiming under a fraudulent deed, obtained by a husband and a father, acting for their interests as well as his own. In this case, the Chancellor said. " He should regret

that any doubt should be entertained whether it is not competent to a Court of equity to take away from third persons the benefit which they have derived from the fraud, imposition, or undue influence of others." We should join in that regret. But, the distinction between a declaration that a third person, a mere volunteer, claiming under a deed fraudulently obtained by a person acting for his interests, can be reached by a Court of equity, though such volunteer had " no personal interference in the transaction," and a declaration that every person claiming under such a deed for a valuable consideration, though entirely untainted by the fraud, and unconnected with those concerned in it, must, necessarily, lose his property, is too obvious not to be perceived.

The cases cited by the Lord Chancellor, in support of his opinion, which are also referred to in *Hildreth* v. *Sands*, are all cases in which the third person affected by the fraud claimed as a volunteer, and was, in some measure, connected with the party practising the imposition. The mischief which these decisions were intended to reach, was the attempt (to use the language of Lord Chief Justice Wilmot) " to purify the gift, by partitioning and cantoning it out amongst his relations and friends." That a question could exist in such a case, furnishes a very strong argument in favour of the parties claiming under this deed.

The very respectable opinion, then, of Chancellor Kent, does not bear upon this case, nor have we found in the books any decision which

1826.

Brooks
v.
Marbury.

does bear upon it, so as to affect the creditors who claim under the deed of the 31st of December, 1819. We think, then, there is no error in this first instruction given by the Court to the jury.

The *counsel for the* plaintiff moved the Court to instruct the jury, " that if they should be of opinion, from the evidence, that the deed was devised and executed by Fitzhugh, and procured and accepted by Marbury, with the motive and intent, and for the purpose and object, of suppressing a prosecution against said Fitzhugh, by prevailing with the holders of the said forged notes to forbear and forego a prosecution for the said forgeries ; that then the said deed is fraudulent, and void in law, as against the plaintiff."

In discussing the propriety of refusing to give this instruction, it may be proper to observe, that there is no error in rejecting a motion of this description, unless it ought to have prevailed in the very terms in which it was made. Nor is a Court to be required to give opinions on abstract propositions not supported by any evidence in the cause. The language in which counsel addressed this application to the Court, presents different ideas to the mind, and is susceptible of different constructions. The Court is required to say, that the deed is void if executed by Fitzhugh, *and procured and accepted by Marbury,* with the intent of suppressing the prosecution, by prevailing with the holders of the said forged notes to forbear and forego a prosecution for the said forgeries. If this was to be the effect of

the deed itself, unaccompanied by any stipulations which were to be the condition of its application to the purposes for which it professes to be made, then the instruction would have contradicted that previously given, and was properly withheld. But, if the counsel is to be understood as praying the Court to say, that if the deed was to be used by Marbury, as an instrument by which to procure the suppression of the prosecution, that being the condition on which the holders of the forged notes were to entitle themselves to its advantages, it was fraudulent and void as to the plaintiff, there can be no doubt that the instruction ought to have been given, unless the Court was satisfied that there was no evidence in the cause to which it could apply.

The second motion is, in substance, that if the jury find, from the whole evidence, that the deed was executed for the intent and purpose aforementioned, and that the preferred creditors accepted the agency of the said Marbury, and adopted his act in procuring and accepting said deed, it is competent to the jury to infer a notice, either actual or constructive, to the said preferred creditors, through their said agent, of the illegal consideration, intent, and object, of the said deed.

This instruction was refused, because there was, in the opinion of the Court, no evidence to authorize the conclusions of fact, in the making of which the law was to arise. There was no error in refusing it on this ground. There would have been error had there been testimony

1826.

Brooks
v.
Marbury.

in the cause to authorize the conclusions of fact assumed. The counsel also moved the Court to instruct the jury, that if the preferred creditors named in the said deed, or any other creditors of the said Fitzhugh, have not accepted or claimed any benefit under it, and that the same remains the mere act of Marbury and Fitzhugh, without any participation before or after, on the part of the preferred, or other creditors of the said Fitzhugh, then the said deed is fraudulent and void as against the plaintiff.

How far the assent of the creditors preferred by the deed, was necessary to its validity.

The Court refused to give this instruction. In, discussing the propriety of this opinion, it becomes necessary to inquire whether the deed remained imperfect, passing nothing in law to Marbury, until it received the assent of the creditors. Upon its face it purports to transfer the property immediately, without any act on the part of the creditors or others. It is incumbent on the plaintiff to show that this is not its legal operation.

It will be very readily conceded, that, had the creditors disclaimed the advantages proffered to them in this deed, or looked on as unconcerned spectators while the property was applied by Marbury to the use of Fitzhugh, these, or other circumstances tending to show that the deed was not made in good faith for the purposes expressed in it, would have induced a Court of Chancery to set it aside, or have justified a Court of law in instructing a jury to consider it as fraudulent. But nothing of this sort is alleged. The single inquiry is, whether the assent of the

creditors be necessary to the completion of the deed. If it be, then the title to the property it purported to convey remained in Fitzhugh until such assent should be given, and might be subjected to this attachment. If the instrument was complete without such assent, then the property passed immediately to Marbury for the purposes of the deed, and did not remain liable to attachment.

Deeds of trust are often made for the benefit of persons who are absent, and even for persons who are not in being. Whether they are for the payment of money, or for any other purpose, no expression of the assent of the persons for whose benefit they are made, has ever been required as preliminary to the vesting of the legal estate in the trustee. Such trusts have always been executed on the idea that the deed was complete when executed by the parties to it. The counsel for the plaintiff could mean no more than to insist, that the omission of the creditors to assent to the deed, or claim under it, was such evidence of fraud, that the jury ought to find it fraudulent. Let this circumstance be examined.

Real creditors are rarely unwilling to receive their debts from any hand which will pay them. No such unwillingness can be gratuitously ascribed to the holders of forged notes. Unless there be proof to the contrary, the banks must be considered as willing to receive payment from Mr. Marbury, or any other person, from the proceeds of the sales of this property, or from any

other fund. This deed was executed on the 31st day of January, 1819, and the attachment was sued out on the 10th of February, 1820. Time was required to sell the property, and to collect the proceeds of the sales. It is not alleged, in the statement, on which the opinion of the Court was prayed, that any notes fell due before the attachments were issued, and remained unpaid. These circumstances do not, we think, afford any ground for the presumption that the deed was fraudulent, so that the property it purported to convey was, on the 10th of February, the property of Fitzhugh, and, consequently, liable to be taken by this attachment.

The counsel for the plaintiff then moved the Court to instruct the jury, that if the great majority in number and value, of the creditors of the said Fitzhugh, were, by means of said deed, unjustly and purposely hindered, delayed, and defeated, in their proper suits and remedies, for the recovery of their said debts, on the absconding of Fitzhugh, and that the deed was executed with the purpose of defeating all legal recourse in behalf of such majority of creditors against the property and effects which said Fitzhugh intended to leave behind, and did leave behind him, then the said deed is fraudulent and void. This instruction also was refused.

*Effect of the deed to defeat the legal remedies of other creditors.* The right of a debtor to prefer particular creditors, where no bankrupt or other law prohibiting such preference exists, is not questioned. Yet, such preference defeats all other creditors, whether they amount to a majority in number

and value or not. The Court ought not to have left it to the jury to defeat this right, because they might think it unjust. The instruction prayed by the counsel, if given, would have defeated it.

The last prayer of the plaintiff supposes, that the deed was obtained for the purpose of being used as the means of suppressing the prosecution ; and, farther, that Marbury acted as the agent of the preferred creditors. The refusal of the Court to give this instruction, must have been founded on the opinion, that the question was entirely abstract in its nature. If there was any evidence tending to this conclusion, which ought to have been submitted to the jury, the instruction ought to have been given. But if there was no such evidence, the Court could not be required to say, hypothetically, what would be the law had the evidence existed.

This Court is of opinion, that the Circuit Court erred, in admitting the record of the deed offered in evidence, to be read to the jury, without any evidence that the original was not in the power of the party offering the copy. The judgment, therefore, is to be reversed, and the cause remanded to the said Court, with directions that the verdict be set aside, and a *venire facias de novo* be awarded.[a]

a The general principle that, in the absence of any express provisions of a bankrupt law applicable to the case, a debtor has a right to prefer one creditor to another, by actual payment, or a transfer to the creditor himself, or by an assignment in trust, if the creditor be a party to the assignment, or subsequently assents thereto, has been settled in a variety of cases in the different

1826.

Brooks
v.
Marbury.

Courts of this country, both State and of the Union. (Hatch v. Smith, 5 *Mass. Rep.* 42. Putnam v. Dutch, 8 *Mass. Rep.* 287. Widgery v. Haskell, 5 *Mass. Rep.* 144. Stevens v. Bell, 6 *Mass. Rep.* 339. Thomas v. Goodwin, 12 *Mass Rep* 140. Cushing v. Gore, 15 *Mass. Rep.* 74. Meeker v. Wilson, 1 *Gallis. Rep.* 419. Brown v. Minturn, 2 *Gallis. Rep.* 557. M'Menomy v. Ferrers, 3 *Johns. Rep.* 72. Wilkes v. Ferris, 5 *Johns. Rep.* 335. Phœnix v. Ingraham, 5. *Johns. Rep.* 412. Hendricks v. Robinson, 2 *Johns. Ch. Rep.* 283. Murray v. Riggs, 15 *Johns. Rep.* 571. Austin v. Bell, 20 *Johns. Rep.* 442. Wilt v. Franklin, 1 *Binn. Rep.* 502. 514. Bird v. Smith, 4 *Dall. Rep.* 85. in note. Lippincott v. Barker, 2 *Binn. Rep.* 186. Marbury v. Brooks, 7 *Wheat. Rep.* 556.)

The resulting trust, or residuary interest, remaining to the assignor, after the purposes of an assignment for the payment of debts are satisfied, does not avoid the deed, unless it be made *mala fide*, and for the sake of the resulting trust; nor is such interest liable to execution against the grantor's property. (Wilkes v. Ferris, 5 *Johns. Rep.* 336.) But, where an assignment was made in trust, (1.) To pay certain preferred creditors; (2.) To pay the other creditors of the assignor on condi.ion of their releasing their demands; (3.) In case any of them should refuse to release, then in further trust to pay such of the creditors of the assignor *as he should appoint.* Certain of these creditors refused, obtained judgment, and levied on the property in the hands of the trustees : It was held, that the trust failing as to them, resulted for the benefit of the assignor, and the deed was, therefore, void, by the statute of frauds, as to the other creditors; and being void *in part*, was void *in the whole.* (Hyslop v. Clark, 14 *Johns. Rep.* 458.) But an assignment by a debtor, in trust, with a power of revocation, is fraudulent only as regards judgment creditors, or such as are taking measures to recover their debts by suit. (Murray v. Riggs, 15 *Johns Rep.* 571. 588.) It would, therefore, seem, that an assignment like that in *Hyslop* v. *Clark* would be good, if the new appointment were made before any creditor refusing to discharge had obtained a judgment, or brought a suit. It could not, then, be said to be made to "delay, hinder, or defraud creditors," according to the language of the statute of frauds of Elizabeth. Thus, where A., on the 23d of March, 1798, assigned property to B., in trust, to pay him, and certain other creditors,

with a power of revocation, and to appoint new trusts, and, on the 31st of May, 1800, executed an irrevocable deed to B., in trust, having before made several intermediate deeds, all in relation to the same subject, and reserving the same power of revocation; it was determined, that the last deed was valid, and might be taken in connexion with the first, and no rights of creditors having intervened, the first deed was confirmed by the last. (Murray v. Riggs, 15 *Johns. Rep.* 571. 588.) And it has been held in the State of New-York, that the deed of assignment may exclude from its benefits such creditors as neglect or refuse to assent to the assignment within a limited time, throwing the distributive shares, to which they would have been entitled, into the general mass, for the benefit of the other creditors provided for by the deed. (S. C. *ib.*) But, if the deed, instead of merely excluding the dissenting creditors, and throwing their shares into the general mass, reserves the shares of the dissenting creditors, and directs them to be paid to the grantor himself, the deed of assignment is fraudulent and void. (Austin v. Bell, 20 *Johns. Rep.* 442.) In Massachusetts, it seems, that an assignment in trust for such creditors as should, within a certain time, become parties to the deed, and release their demands, is void as against the dissenting creditors. (Ingraham v. Geyer, 13 *Mass. Rep.* 146. But see Hastings v. Baldwin, 17 *Mass. Rep.* 552.) In Pennsylvania, the rule to be extracted from the decisions seems to be, that where no definite time is limited, or a period very remote, within which the assent of creditors is to be given, the assignment is considered as fraudulent. But, where a reasonable time is limited, within which the trust property is to vest in those for whom the beneficial interest was intended, it is valid. (*Whart. Dig.* tit. *Deed,* I. pl. 70. 76.)

In the case of Murray v. Riggs, (15 *Johns. Rep.* 571. 588.) it was held by the Court of Chancery, and the Court of Errors of New-York, that a reservation, in the assignment, of a sum sufficient for the maintenance of the assignor until discharged from his debts, does not invalidate the assignment; though, in case of a deficiency, the creditors are entitled to have the part reserved applied in satisfaction of their debts. But, in the recent case of *Mackie* v. *Cairns,* which has not yet been reported, it was determined, that such a reservation rendered the conveyance totally void.

As to the question how far the fact of the possession of the property assigned, still continuing in the grantor, would affect the va-

1826.

Brooks
v.
Marbury.

1826.

Brooks
v.
Marbury.

lidity of the deed, it seems to be generally considered, that if the possession of the grantor be consistent with the deed, as when the possession is continued at the request, and for the benefit of the assignees, for their convenience in making the sale, or where the property is at sea, or out of the country, if possession is taken by the trustees within a convenient and reasonable time, the conveyance will be valid. (Vredenberg v. White, 1 *Johns. Cas.* 156. Meeker v. Wilson, 1 *Gallis. Rep.* 419. Dawes v. Cope, 4 *Binn. Rep.* 258. Wilt v. Franklin, 1 *Binn. Rep.* 517. Putnam v. Dutch, 8 *Mass. Rep.* 287. Lippincott v. Barker, 2 *Binn. Rep.* 174.) So, a delivery of the key of the warehouse in which the goods are stored, is a sufficient delivery to transfer the property. (Wilkes v. Ferris, 5 *Johns. Rep.* 335.) So is a delivery of the receipt of the storekeeper for the goods, it being the regular documentary evidence of the title. (*Ib.*)

As to the effect of an assignment for the benefit of creditors, (whether under a bankrupt law, or a voluntary private assignment, valid by the *lex loci*,) on property, or the rights of creditors, in another state or country than that where the assignment is made, see Hatch v. Smith, 5 *Mass. Rep.* 42. Widgery v. Haskell, 5 *Mass. Rep.* 144. Harrison v. Sterry, 5 *Cranch's Rep.* 289. Ingraham v. Geyer, 13 *Mass. Rep.* 146. Le Chevalier v. Lynch, *Dougl. Rep.* 170. Hunter v. Potts, 4 *Term Rep.* 182. Milne v. Morton, 6 *Binn. Rep.* 353. Burke v. M'Clain, 1 *Harr. & M'Henry's Rep.* 236. Taylor v. Geary, *Kirby's Rep.* 313. Wallace v. Patterson, 2 *Harr. & M'Henry's Rep.* 463. Ward v. Morris, 4 *Harr. & M'Henry's Rep.* 330. This point was much discussed in the case of Holmes v. Remsen, 4 *Johns. Ch. Rep.* 460. S. C. 20 *Johns. Rep.* 229. where all the authorities on the subject will be found collected. Even after these very learned and able discussions, it must still be considered as an unsettled question of international law.