WILLIAM FELLOWS and another *v.* THE PRESIDENT, DIRECTORS AND COMPANY OF THE COMMERCIAL AND RAIL ROAD BANK OF VICKSBURG.

By the common law a debtor may make a valid assignment for the benefit of his creditors, and may even give preferences to a certain class of them, and it is no objection to such an assignment, that it defeats the legal remedies of all other creditors, though a majority in number and value, unless there be some provision of a bankrupt law to invalidate the deed. But the assignment must be absolute and unconditional, the assignor neither retaining power to change the trustees, nor a control over the deed of trust.

By the common law the assent of creditors will be presumed, in case of an assignment to a trustee for the benefit of all the creditors, where no release or other condition is stipulated by the debtor, and the property is to be distributed among all the creditors *pro rata*. This assent is presumed on the ground, that the trust must be for their benefit.

The defendants, a corporation created by another State, in which the common law prevails, for the purpose of banking and constructing a railway, made an assignment of all their property to certain trustees. By the deed of assignment, among other things, it is declared, that the trustees shall be the joint agents of the corporation and of such of the creditors as may become parties thereto; that they shall render semi-annual accounts to the assignors; that the latter retain the right of substituting a new trustee in case of vacancy; and that the trustees shall borrow a sum of money for the completion of the railway within the time prescribed by the charter, for the purpose of saving the property and the charter from forfeiture, the amount to be repaid by preference, out of the effects assigned, and its re-payment secured by a lien on the real estate of the corporation; the deed reciting the inabil-

ity of the corporation from the pressure of its debts, to raise the means of completing the road, as the principal cause for making the assignment. There was no schedule of the creditors, nor specification of the property intended to be conveyed. The Directors reserved the right of controling the trustees in relation to claims against the corporation of a doubtful character. In an action by plaintiffs, creditors of the corporation, who had never expressly assented to the assignment, commenced by attachment of a debt due to the corporation in this State : *Held*, that many of the stipulations in the deed are inconsistent with the idea of a *bona fide* assignment, by which the legal title of the property of the debtors is to be vested in trustees for the benefit of the creditors ; that it is rather the creation of an agency to manage the affairs of the corporation, under the supervision of the Directors, for the purpose of completing the road ; that it is not such an assignment as would be valid by the common law ; and that the assent of the plaintiffs, as a part of the creditors, cannot be presumed. Attachment maintained.

APPEAL from the District Court of Madison, *Curry*, J.
*Stockton* and *Bemiss*, for the plaintiffs.
*T. N. Peirce*, for the appellants.

BULLARD, J. This is an action commenced by attachment against the Commercial and Rail Road Bank of Vicksburg, to recover the amount of certain certificates of deposit, amounting to about $6000. The attachment was levied, as it appears, by the Sheriff's return, upon a debt due by O. B. Cobb, to the defendants, by virtue of several promissory notes held by the defendants against the garnishee, amounting to about thirty-five thousand dollars.

The counsel appointed by the court to represent the absent debtors, after making a motion to dissolve the attachment, which was overruled, answered, that no property or effects belonging to them had been attached ; that the debt formerly due by Cobb to them, was, on the · 13th day of February, 1840, transferred, assigned, and delivered, for a valuable consideration to Bodley, Frazier and Robbins, together with all the other property, effects and assets, then belonging to the defendants, for the benefit of their creditors generally, and that no one creditor should have an advantage over others, and that the notes, bills of exchange, &c., due by Cobb were on that day delivered to the said trustees, of which due notice was given to said Cobb, before the institution of this suit. This plea is preceded by a general denial.

The persons above named as trustees, intervened in this suit, except Frazier, who it is alleged was re-placed by Walker, with

the consent of all concerned. They set forth the same assign-ment referred to by the bank, and allege, that it is valid by the laws of Mississippi, and by the charter of the Bank. They refer to copies of the assignment as part of their *petition of intervention* They allege, that all the notes, other evidences of debt, and pro-perty, were transferred and delivered to them, and that they are the legal holders and owners of the same. They further allege, that the debt due by Cobb was at the same time transferred and assigned to them, and that the debtor had notice of the assign-ment before the inception of this suit. They, therefore, pray to be decreed the true owners and holders of said debt, and that the attachment may be dissolved, and for general relief.

It is admitted of record on the part of the plaintiffs, that the as-signment was executed by due authority. That Walker has been substituted for Frazier, as assignee ; that all the effects including all notes, bills, and other evidences of debt, among which were those due by Cobb, were delivered over to the assignees on the day of the assignment ; that notice of the assignment was pub-lished in two newspapers in Vicksburg, and in two newspapers in New Orleans, for the space of one year after the date of the assignment ;· that the fact of the assignment was publicly spoken of in and about Vicksburg, and the surrounding country ; and that Cobb resides twenty-five miles from that place, and was fre-quently in Vicksburg, in 1840. On the part of the defendants and intervenors, it is admitted, that the certificates of deposit were duly executed by the proper officers of the Bank. The sig-natures and official character of Bibby, the Cashier, is admitted ; and that his certificate or statement, without oath, is to be re-ceived as evidence of the amount that Cobb owed the Bank, at the time of the assignment, and whether he has paid any part since, or of any thing which he may have done, or proposed in re-lation to the debt.

The judgment below was for the plaintiffs against the original defendants and the intervenors, and they have appealed.

The principal question which the case presents, and which has been argued in this court is, whether the assignment by the Bank to the intervenors, be valid according to the laws of the State of Mississippi, and whether it has been so notified to the garnishee

Cobb, as to place the debt due by him to the Bank, beyond the reach of its creditors, and the plaintiffs' attachment.

It becomes thus necessary to state the substance of the instrument, in virtue of which, the intervenors claim the property attached, as the assignees of the Bank.

It is recited in the instrument, that, whereas the embarrassed situation of the President, Directors and Company of the Commercial and Rail Road Bank of Vicksburg, and the inability of its debtors to meet their liabilities, put it out of their power to *complete the Rail Road,* or to pay its debts, without having time to make collections ; and whereas, the unprecedented pressure which now rests upon the community, and the utter impossibility of the corporation to collect its debts immediately, without being destructive to the best interests of its debtors, as well as of the corporation, render it necessary, (in order that justice may be done to all the creditors, and *in order to complete the Rail Road,* which was the great and primary object for which the charter was granted,) that an assignment of the property, debts and effects of said corporation should, at once, be made, for the benefit of the creditors, as will most effectually promote the interests of the creditors, and protect the debtors from loss and sacrifice ; and at the same time furnish the means to finish and complete the Rail Road, and to protect and secure to the stockholders the franchise granted by the charter. For these reasons, the President, Directors, &c., in consideration of the premises, and of five dollars in hand paid, &c., declare that they have given, granted, bargained, sold, assigned, transferred, and set over, to W. W. Frazier, Thomas E. Robbins, and William S. Bodley, and the survivor of them, all the property, real, personal, and mixed, which either in law or equity belongs to them ; to wit, its real and personal estate of every kind, or description, situate in the county of Warren, and State of Mississippi, or elsewhere, its stocks, goods, wares, merchandize, bills receivable, bonds, notes, book accounts, claims, demands, judgments, choses in action, and all its property of every kind and nature whatever, enumerated and specifically mentioned or not ; and they further bargain, transfer and assign to the said assignees, all the surplus profits, hereafter arising, or which may hereafter accrue from the said Rail Road, after the time said Rail

Road is finished and completed, to Jackson, that is to say, all the profits which may thereafter be received over and above the necessary disbursements of the road, including officers' salaries; and in order more effectually to carry this provision into effect, the said trustees or any hereafter to be appointed, are hereby declared to be the joint agents of the party of the first part, and of all the creditors of said corporation, and as such agents, they are authorized to take possession of said road, and control the same for the purpose of completing the same, and to receive the profits and issues thereof; provided however, the horses, slaves, wagons, carts, mules, oxen, iron engines, and implements of every kind now engaged in working on, and constructing the Rail Road are not hereby intended to pass to said assignees, and are hereby exempted and excepted out of the provisions of the deed. This assignment is declared to be in trust for the following uses and purposes,—that the trustees shall proceed in the manner they think proper, to sell and dispose of, either at private sale, or by auction, the real and personal estate, goods and stocks, hereby conveyed to such person or persons, and for such prices as in their judgment may appear best for the interest of all concerned ; and to collect and hold the proceeds of said sales, and also to collect the debts due, and the profits of the Rail Road after the time of its completion to Jackson ; provided they shall never refuse to receive from the debtors of the Bank, its bank notes, or other evidences of its liability, in payment of debts, provided such debtors shall give sufficient security for the amount of their debts, within twelve months after the registration of this deed of trust. It is further stipulated that in all cases, when security is not given, it shall not be compulsory on the trustees to institute suits immediately, but they may give further indulgence, or compromise, or settle in such manner as will best secure the same. The trustees are to pay all reasonable expenses and charges for making and carrying into full effect this assignment, and in doing so, may employ one or more attorneys, agent or agents, who shall be paid out of such proceeds ; and it is stipulated that the trustees shall retain for themselves out of the proceeds as a compensation for their trouble, at the rate of $8000 each, per annum in full for all services in managing said corporation. It is then declared, that,

whereas it was the principal object of the legislature in granting the charter, that the Rail Road should be completed ; and whereas, if it is not completed within the time limited in the act of incorporation, the charter will be forfeited as well as the road itself, now therefore, with a view to prevent irreparable injury to the creditors of said company, it is stipulated and agreed, that the trustees shall, and they are authorized, and it is made their duty to borrow in the name, and on behalf of said company such sums of money as may be necessary to complete the Rail Road to Jackson, not exceeding $250,000, and the property assigned is to be bound for such loan, with interest. Therefore, in the first place, out of the nett proceeds the trustees shall pay off and discharge in preference to all other claims, or demands, such amount, not exceeding $250,000. With the remainder of the nett avails the trustees are to pay all the liabilities of the Bank, except the stock‧holders ; and should the fund not suffice to pay all the debts and liabilities of the institution in full, then it shall be applied so as to pay a *pro rata ;* but if a balance should remain, it is to be refunded to the bank : provided that no creditor shall be permitted to participate in the payment, except upon the conditions and terms set forth in this deed, the substance of which is, that publication is to be made to notify all the creditors to file their claims within twelve months, and all who shall so file their claims shall be considered as parties to the assignment, and at the end of twelve months, all the proceeds, after first paying the loan, should it be made, shall be divided equally in proportion to the amount of their claims, and every six months afterwards, the trustees are to proceed and make dividends, provided that creditors may file their claims at any time, but shall only come in for future dividends. The Board of Directors reserve to themselves the right of approving or disapproving of doubtful claims, and the creditors are required, except as to a particular class of debts, to present them to the Board of Directors, or a Committee for their approval ; and whenever suits are brought on claims rejected, if such claimants shall notify the trustees that suit has been commenced, they shall be considered parties to this deed from that time, and if they recover shall be entitled to dividends with the other creditors. The deed makes other provisions in relation to the distribution

among the creditors, not necessary to mention in detail, and goes on to require that the trustees shall exhibit to the Board of Directors, semi-annually, a statement of their accounts. It provides for the appointment of a successor, in the event of the death or resignation of one of the trustees, by the Bank; and finally, it is repeated, that this deed embraces all the property of the Bank, and its branches, and that any liens which may exist on any of the property shall be discharged by the trustees out of the fund.

There is a second or supplemental deed of assignment or trust, bearing the same date with the above, repeating many of its clauses and stipulations, and declaring the trustees to be the joint agents of the Bank, and such of its creditors as may become parties. The President and Directors, sell to the trustees all the slaves, &c., engaged in finishing the road, which had been expressly reserved by the first deed, and make further specific provisions for the finishing of the road; in order to save the franchise granted by the charter. It is declared to be the main and principal object of the deed to secure to the creditors of the institution the benefit and advantages of the road, and, by completing the same, to afford facilities for the payment of the debts of the Bank.

The validity of this assignment depends upon the law of the place where it was entered into, although intended to operate upon personal property in this State. We shall, therefore, inquire into its form and effect, only so far as it concerns the creditors in relation to debts due to the corporation by our citizens. Whatever may be thought of it, as the means of carrying on the operations of the corporation by agents and trustees, instead of acting by a board of Directors, and thereby attempting to act in a different manner from that indicated by its charter, it is only the right of the creditors of the Bank to attach the property purporting to have been assigned, which is to be examined by us. It is admitted, that the common law prevails in the State of Mississippi, and, consequently, we are to look into approved works upon that system of jurisprudence for information on this subject.

It seems to be well settled at common law, that a debtor may make a valid assignment for the benefit of his creditors, and that he may even give preferences to a certain class of them; and it is

no objection to an assignment, that it defeats all other creditors of their legal remedies, even if amounting to a majority in number and value, unless there be some provision of a bankrupt law to invalidate the deed. 11 Wheaton, 78.

It appears also to be settled, that the assent of creditors will be presumed, in the case of an assignment to a trustee for the benefit of all the creditors, where no release, or other condition is stipulated for, on behalf of the debtor, but the property is to be distributed among all the creditors *pro rata.* This assent is said to be inferred upon the general principle of law, because the trust must be for their benefit, and cannot be for their injury. 4 Mason, 206.

The assignment should also be absolute and unconditional, the assignor neither retaining a power to change the trustee, nor a control of the deed of trust. 12 Johns. Rep. 71. 11 Wendell, 202.

In the assignment or deed of trust under consideration, it is expressly declared, that the assignees or trustees are the joint agents of the Bank, and such of the creditors as may become parties; and they are required to render semi-annual accounts to the assignors, and the right is retained, and appears by the record to have been exercised, of substituting a new trustee in case of vacancy. The assignees are authorized to retain, out of the proceeds of the property, an enormous salary of $8000 each. It provides for the borrowing of $250,000, and subjecting their real estate to a lien for its reimbursement, and the amount to be paid out of the avails of the effects assigned; thus treating the property as if still that of the corporation, and providing for the creation of a new debt to be paid in preference, in order to complete the Rail Road, and thus save the franchise to the stockholders, and that the road itself when finished, may afford the means of paying the debts of the Bank. Thus a large fund is locked up from the pursuit of creditors; and, indeed, it is set forth as the principal cause and inducement for making the assignment, and appointing trustees, that the pressure of debts put it out of the power of the corporation to complete the Rail Road, and to provide the ways and means of doing it, in preference to paying those debts out of the sale of all the property of the assignors. The creditors are told that this is done for their benefit, because all the profits of the

road when completed, will be for their use. Many of these stipulations appear to us inconsistent with the idea of a *bona fide* assignment of the property of a debtor, by which the legal title is vested in the trustees for the sole benefit of the *cestui que trust.* It appears to be rather the creation of an agency to manage all the affairs of the corporation under the supervision of the Board of Directors, for the avowed primary purpose of completing the road by deferring and throwing obstacles in the way of its creditors, by devoting a large sum to that purpose, in preference to paying the creditors. The assignees are what they are called in the deed, the agents of the corporation, and of such of the creditors as may accede to the terms offered in it; but we do not think ourselves authorized to infer the assent of the plaintiffs as a part of the creditors. The absence of a schedule of the creditors, and of any specification of the property intended to be conveyed, and the fact that the Bank reserves also the authority to control the trustees in relation to doubtful claims, confirm us in the opinion, that this is not such an assignment of property for the benefit of creditors, as would be held valid by the laws of Mississippi. With the question whether that corporation can conduct its affairs by such agents, or trustees, and whether it amounts to an abuse of its powers as a corporation, we have nothing to do. That question concerns the State, and the corporation. The only question for us to decide is, whether the assignment in question placed the debt due by Cobb beyond the reach of a creditor, who never assented, and cannot be legally held to have assented to the deeds of assignment.

This view of the case renders it unnecessary to inquire into the question of notice given to the debtor.

*Judgment affirmed.*