## CONEY ISLAND CO. v. DENNAN.

(Circuit Court of Appeals, Sixth Circuit. January 19, 1907.)

### No. 1,568.

1. CARRIERS—ACTIONS FOR DEATH OF PASSENGER—QUESTIONS FOR JURY.

Defendant operated a passenger boat between the city of Cincinnati and a pleasure resort a few miles up the river. Passengers in going to and from the vessel at Cincinnati passed over a wharfboat, between which and the steamer there was a railed bridge three feet wide, and on the side of the steamer, where it rested, there was a space in the railing nine feet wide. Guards were usually stationed at such space on either side of the bridge to protect passengers going off the boat from stepping or falling off. Plaintiff's intestate, a boy 12 years old, with his mother, her sister, and two small children, returned on the boat late one evening with some 1,000 other passengers. There was much crowding at the bridge, and each of the women carried a child. In passing onto the bridge in some way plaintiff's intestate went to one side, and fell between the boats and was drowned. There was evidence tending to show that there were no guards stationed at the sides of the bridge. *Held*, that the question of defendant's negligence was one for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 1315, 1319.]

2. WRIT OF ERROR—REVIEW OF INSTRUCTIONS—EXCEPTIONS.

An exception to a charge, in order to found a right to review, must be sufficiently distinct and specific to direct the attention of the court to the particular error which is the subject of complaint.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Appeal and Error, § 1141; vol. 46, Trial, §§ 689–693.]

3. TRIAL—INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE OF CHILD.

In an action to recover for the death of a boy 12 years old through the alleged negligence of defendant, a requested instruction, stating generally

that plaintiff could not recover if the deceased failed to exercise reasonable care, was properly refused, where it did not explain or define what would constitute reasonable care in one of his age.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, § 489; vol. 37, Negligence, § 393.]

4. NEGLIGENCE—DEATH OF CHILD—CONTRIBUTORY NEGLIGENCE OF PARENT.

In an action by a mother to recover for the death of her son, 12 years old, by falling from a boat on which he was a passenger with her, through the alleged negligence of the defendant, which was operating the boat, an instruction that plaintiff was bound to exercise ordinary care for the safety of her son, and if she failed to do so, "and her failure in any way contributed" to her son's loss, she could not recover, was properly refused, as covering any negligence of plaintiff which may have contributed to her son's death however remotely.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, § 396.

Imputed negligence, see Chicago, G. W. Ry. Co. v. Kowalski, 34 C. C. A. 4.]

In Error to the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

Chas. H. Stephens and Lawrence Maxwell, Jr., for plaintiff in error.
C. C. Benedict and J. Hartwell Cabbell, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This was an action brought by the administratrix of Clarence M. Henry to recover damages for wrongful negligence of the defendant, resulting in the death of the person whose representative she is. It is founded upon a statute of Ohio, giving a remedy in such cases for the benefit of the relatives of the deceased who have suffered pecuniary loss from the death.

The circumstances out of which the cause of action is supposed to have arisen are these: Coney Island is a pleasure resort a few miles up the Ohio river from the city of Cincinnati. The Coney Island Company is a corporation organized under the laws of West Virginia, and was in 1904 the owner of the Island Queen, a steamboat plying between the city and the resort during the summer months of that year for the carriage of passengers. At the landing at the city, for the purpose of embarking and discharging passengers, the company had a wharfboat, over which passengers passed from the landing to the steamer and from the steamer to the landing. On the afternoon of August 26, 1904, the deceased, who was a boy of about 12 years of age, with his mother and a sister of hers and two young children of the latter, took passage on the steamer from the city to the resort, and, after spending some time there, returned to the city on the last trip of the steamer for that evening. This was about half past 11 o'clock. The mother, her sister, and the children passed together from the steamboat toward the wharfboat. Both vessels at the passageway were much crowded. The mother was carrying one of the small children and her sister the other. The boy, Clarence, was by the side of his mother. Having difficulty in getting along in the crowd, his mother told Clarence that if he should get separated from her he should wait for her on the wharfboat. This was while they were nearing the wharfboat and moving slowly. In front or somewhat to one side of their course was

the gangway or bridge for crossing from the steamer to the wharf-boat. There was an opening in the railing around that side of the steamer of about nine feet, and in the middle of this was the bridge, about three feet wide, and having rails on each side to prevent people from falling off. This bridge was movable, and when in use rested partly on the steamer and partly on the wharfboat, and was intended to provide passageway from one vessel to the other. There was an open space of about three feet on each side of the bridge, extending to the post at the end of the railing. The vessels were near together, but there was an opening down between them of the width of from 7 to 20 or 24 inches, as estimated by different witnesses. Soon after the mother's direction to the boy, above stated, he got separated from his companions. He followed a lady who went over the opening at one side of the bridge, but in some way lost his footing, fell down through the opening, and was drowned. There was evidence tending to show that the crowd was dense about the gangway, moving in a mass. The sister of the boy's mother testified: "We had just to move with the crowd; we couldn't get one way or the other." More than 1,000 people, men, women, and children, were on the steamer. The boy was bright and capable beyond his years, but neither he nor his mother had ever been on a steamboat before. The evidence tended to show that the bridge was liable to get misplaced from the rocking and listing of the boats, and that the wide opening in the railing was to accommodate the changing relation of the boats, and that the company kept a guard of from two to four men around the bridge to keep it in position, and also to keep passengers from going over the openings at the sides of it. But there was also evidence that on this occasion either there were no guards there, or, if there were, they did not stop or warn passengers who crossed at the sides of the bridge. We have stated the case in this detail because of the contention that the court erred in not instructing the jury to find for the defendant. The jury found a verdict for the plaintiff, and assessed the damages at $4,000.

Counsel for the plaintiff in error submit four questions for our consideration on this review:

(1) Whether the court erred in refusing to give the peremptory instruction asked. (2) Whether the court erred in its instructions in stating the nature of the contributory negligence of the plaintiff which would bar the recovery. (3) Whether the court erred in refusing to charge the jury that, "if there was an open space between the boat and the wharfboat, which might have been seen by Clarence Henry if he had used reasonable care while leaving the boat, and you find that he walked or fell into such open space for want of reasonable care, the plaintiff cannot recover." (4) Did it err in refusing to instruct the jury that:

"The plaintiff, the mother of the deceased, was bound to exercise ordinary care under all the circumstances for the protection and safety of her son; and if she failed to do so, and her failure in any way contributed to her son's loss, then she cannot recover herein."

1. In view of the facts (those either not disputed or such as the jury might find from the evidence) we think there were grounds upon which

the jury might conclude that the company was at fault in not providing more ample means for safely passing from the steamer to the wharfboat. There was a large crowd of passengers, many of them women and children, and the bridge was narrow. The boats were so near together as to tempt the unwary, the bridge being crowded, to pass over at the opening by the sides of it, and yet there was danger, as the sequel showed, that passengers might by a false step fall down through the opening. That there was danger of it, which the company itself appreciated, is shown by the fact that its practice was to station guards there, whose duty it was to see that passengers did not pass between the bridge and the end of the railing; but more especially, because the passage in that way was dangerous, and the company owed a duty to its passengers to maintain a guard there, to prevent accidents which were liable to happen from attempts to pass over the open space, and the evidence, as we have said, tended to show either that the guards were not stationed, or, if they were, they did not attend to their duty in this regard, and that the accident resulted from this fault. With respect to the contributory negligence charged by the defendant, we shall have more to say further on. We think it would have been palpable error for the court to have charged the jury that the evidence wou'd not justify a finding that the defendant was negligent in the discharge of its duty to the deceased.

2. In his charge to the jury, the presiding judge, after referring to the circumstances of the accident, and coming to the subject of the contributory negligence of the boy, wherewith he was charged by the defendant, said:

"In view of all these conditions that I have attempted hastily to sketch, and which you must carry in your minds, did that boy, at that time, know and appreciate the danger, if he attempted to step from the boat over to the wharfboat, of falling into the river? Do the conditions presented require or justify that conclusion? If he, for the sake of getting over to the wharfboat ahead of the great body of people on board who were pushing over the bridge, took the risk, then it was his own negligence that caused him to fall into the river; but if he did not appreciate it, if because of his age he did not understand and did not appreciate the danger, but believed that he could pass in safety, that he might follow the woman who was passing over, and he was not advised to the contrary, then you would not be warranted in saying that he assumed the risk, or that he was negligent in following the woman over to the wharfboat in that way—the woman who preceded him."

And in varying forms of expression this instruction was several times repeated in the course of the charge. The complaint made of this instruction is that it supplied a wrong test of the negligence of the boy, and that the court, instead of instructing the jury that his negligence depended upon his actual appreciation of the danger, should have told them that it depended upon the appreciation which he ought to have had of the danger, because it is said his lack of appreciation may have arisen from his carelessness and inattention and the failure to exercise the faculties he possessed. But we think the criticism is too sharp, and does not fairly interpret the language of the court. In the circumstances of the case the jury were compelled to judge of the boy's knowledge of the danger by the test of probability. Taken altogether, the instruction of the court was that, if the boy had the means

of knowing the danger, and chose that way instead of going by the bridge, he was negligent. "Knowing the danger," said the court, "fully appreciating it, did he deliberately choose that way, with all the risks it involved, rather than the way over the bridge?" It may be admitted that the boy, if he was not pressed on by the crowd and had freedom of action, and so was given a choice, was bound to exercise the faculties he possessed, and whether he did this in a reasonable way was to be determined from all the circumstances. Deliberately choosing necessarily implies the exercise of the faculties of the boy upon the knowledge which he possessed. In the case of Klatt v. Foster Lumber Co., 92 Wis. 622, 66 N. W. 791, which is cited for the plaintiff in error, the court stated the grounds of the rule which is invoked as follows:

"The exercise of ordinary care includes the fair use of one's faculties and opportunities of observation, in order to learn and comprehend the dangers which are naturally incident to the situation."

This as a general statement is undoubtedly correct. But it has more reasonable application to a case where the injured party is an adult, and has had previous opportunity for learning the dangers of the situation. It has, however, a much feebler influence when the injured person is a mere youth without experience, brought into peril on the instant without previous opportunity for observation; for how could there be a duty to remember what he had never known, or to act upon an apprehension of danger which he did not at the time understand? But, whatever may be said of the technical merit of the distinction adverted to in its application to the facts of this case, other considerations incline us to overrule this assignment of error. Notwithstanding the fact that the court repeatedly gave its instruction upon this point in the language stated, its attention was at no time called to the modification which the counsel now insist should have been made. At the close of the charge the court said to the jury:

"I want to say to you, gentlemen, that if Clarence Henry knew and appreciated the danger in attempting to step over onto the wharfboat, he was guilty of negligence that would deprive the plaintiff of the right to recover."

Counsel for the defendant said: "We cannot hear, your honor." Whereupon the court rejoined:

"I will repeat, for the benefit of counsel, that if Clarence Henry knew and appreciated the danger of attempting to pass over from this open space to the right of the bridge, onto the wharfboat, he was guilty of negligence, and it would be no excuse that the woman in front of him was using that way in passing over; he could not justify his action by following the woman in front, or anybody else."

The counsel, without any suggestion of the error now complained of, filed eight exceptions to the charge, of which one was to so much of it as related to the subject of contributory negligence, reciting brief parts of it, but not indicating any ground on which the exception was rested. Nor was there any disclosure of the point now raised in the motion for a new trial, though from the opinion of the court it would seem that it was raised at the hearing of the motion. We must therefore suppose that the counsel did not at the trial intend to present or have in mind the distinction between actual knowledge and the obliga-

tion to act upon it, and that it was developed upon subsequent examination of the record. In that case, error could not be assigned upon the instruction, though faulty. Counsel were bound to present their point at the trial, so that the court might consider it, and cannot, under a broad exception not aimed at it, upon subsequent search for error and finding it, bring it forward as a ground for reversing the judgment. It is a well-settled rule that an exception, in order to found a right to review, must be sufficiently distinct to direct the attention of the court to the particular error which is the subject of complaint. A challenge which is aimless, and points to nothing in particular, either in what is expressed or omitted, does not perform the object of an exception. And it is equally well established that when without special request the court gives an instruction which is in the main correct, but requires some modification or addition to make it quite so, it is the duty of counsel for the party whose interest requires the modification to ask for it or challenge the instruction because of the defect, and if they fail to do this they are deemed to be content with it. This assignment of error is also overruled.

3. The third request of the defendant for instructions was this:

"If there was an open space between the boat and the wharfboat, which might have been seen by Clarence Henry if he had used reasonable care while leaving the boat, and you find that he walked or fell into such open space for want of reasonable care, the plaintiff cannot recover."

Unless a request for instructions is entirely correct, and may properly be given without qualification or liability to be misunderstood, there is no error in refusing it. Brooks v. Marbury, 11 Wheat. 78, 6 L. Ed. 423. While, perhaps, this instruction might in general be applicable to the case of an adult, it would need to be accompanied by an explanation of what due care is in the case of a young and inexperienced person. What care does this request imply was required of him? Was it care in attempting to cross at the opening, or was it care in crossing? It should have specified, so as to direct the jury to the point of its application. Besides, we think that, although this instruction was not given in the language or form in which it was expressed, the court did in substance state this rule, explained as it should be by reference to the youth and inexperience of the boy. If, in the language of the court, he attempted to cross at the opening because from his youth and inexperience he did not understand and appreciate the danger, he was not guilty of that want of due care which would bar the action.

4. It is also assigned as error that the court erred in not giving the sixth instruction requested by the defendant. It was as follows:

"The plaintiff, the mother of the deceased, was bound to exercise ordinary care under all circumstances for the protection and safety of her son, and if she failed to do so, and her failure in any way contributed to her son's loss, then she cannot recover herein."

It would seem that the court overlooked the averment of negligence on the part of the mother contained in the answer, for in stating the issues in the charge to the jury, after referring to the denial of negligence on the part of the defendant, the court goes on to say: "Defend-

ant further says that if he did fall from the 'Island Queen' and was drowned, it was because of his own negligence, and not the negligence of the defendant," and makes no mention of a charge of negligence on the part of the mother; and the record leaves open the possibility that the court declined this instruction because it was not supposed to be in issue. If such an inadvertence was seen, it was the duty of counsel to correct it. But it may not have been noticed, and we shall not dispose of the question on that ground. The Supreme Court of Ohio, in Wolfe v. Railway Co., 55 Ohio St. 517, 45 N. E. 708, 36 L. R. A. 812, held that, in the trial of a case arising under the Ohio statute—

"the contributory negligence of the beneficiaries, who are to receive the damages, and for whose benefit the action is brought in the name of the administrator, is clearly a defense to the action, available to the person or corporation causing the injury."

Admitting, for the present purpose, that this was in such sense a construction of the statute as the federal court is required to follow, a question arises whether the defense stated by the answer that, after denying its own fault, the death of the deceased "was caused solely by his own carelessness and that of his mother," would support a defense rested upon the contributory negligence of the mother—a defense which implies co-operative negligence on the part of both parties. We have some doubt upon this question (as to which see 5 Encl. Pl. & Prac. 11, 12 and Watkinds v. South. Pac. R. Co. [D. C.] 38 Fed. 711, 4 L. R. A. 239), but prefer to rest our decision upon the ground that the request was not of itself a proper one to be given. The court is asked to say that, if the mother failed to use ordinary care for her son, and the failure in any way contributed to his loss, she could not recover; but this would not be so unless her failure to use due care contributed proximately to his loss. Any remote failure to exercise care for him, as, for instance, taking him along with her on that trip, would not bar the action. 7 A. & E. Encyc. of Law (2d Ed.) 380. Besides, if this instruction was intended to include negligence in taking the boy with her, it is to be observed that the evidence leaves no room for doubt that the company received and carried men, women, and children indiscriminately. It was therefore in no position to complain if the latter were brought along. But probably the instruction requested was intended to apply to the care the mother gave the boy while they were passing along just before the accident, and we think there was no evidence which fairly justified a finding that she was guilty of negligence. The evidence leaves no doubt that the steamboat was much crowded. The only witnesses who testified to the immediate facts were Mrs. Dunham, the mother's sister, and the mother herself. The former testified that the mother said to the boy, "Clarence, you stay right by mamma, for fear you will get lost in the crowd," and "told him if he got separated, to wait for us on the wharfboat"; and the latter testified that she "told him to catch hold of my dress, so that we wouldn't get separated." She was carrying the little child of her sister in her arms, and they had no reason whatever to apprehend such a danger as confronted them. The only apprehension they had was that they would get separated, and for this they made provision;

In these circumstances we think there was no reasonable ground for imputing negligence to the mother. The conditions were all of the defendant's creating, and she did the best she could in the circumstances in which she was placed.

We are entirely satisfied that the verdict and judgment were right, and we find no sufficient reason for disturbing the result. The judgment will be affirmed, with costs.