(COMMON LAW.)

## MARBURY v. BROOKS.

A debtor has a right to prefer one creditor to another in payment, and his private motives for giving the preference, cannot affect the exercise of the right, if the preferred creditor has done nothing improper to procure it.

But any unlawful consideration, moving from the preferred creditor, to induce the preference, will avoid the deed which gives it.

It is not necessary, to the validity of such a deed, that the creditors, for whose benefit it is made, should have notice of the execution of the deed, provided they afterwards assent to the provisions made for their benefit.

Nor is it any objection, to the validity of the deed, that it was made by the grantor, in the hope and expectation, that it would prevent a prosecution for a felony, connected with his transactions with his creditors; if the favoured creditors have done nothing to excite that hope, and the deed was not made with their concurrence, and with a knowledge of the motives which influenced the grantor, or was not afterwards assented to by them under some express or implied engagement to suppress the prosecution.

Nor will it be invalidated by the fact, that the trustee, to whom the conveyance is made, being the father-in-law of the debtor, received the conveyance with a view of concealing the felony, and preventing a prosecution of his son-in-law, provided it was not executed with the concurrence of the *cestui que trusts*, and a knowledge on their part of the motives which influenced the trustee, or was not afterwards assented to by them under some engagement to suppress the prosecution.

ERROR to the Circuit Court for the District of Columbia.

This was an attachment sued out by the defendant in error, Brooks, on the 10th February, 1820, to attach the lands, tenements, goods, chattels, and credits of Fitzhugh, an absconding debtor, pursuant to the act of Assembly of Maryland of November, 1795, ch. 56. ; levied in the hands of the plaintiff in error, Marbury, who was duly summoned as garnishee, on the 11th February, 1820. The garnishee appeared and pleaded that he had no effects, &c. of the absconding debtor in his hands, upon which an issue was joined and tried by a jury : verdict for plaintiff in the attachment, and judgment in due form against the garnishee.

Upon the trial, evidence was produced on the part of the plaintiff to prove that the said Fitzhugh had, on the 31st December, 1819, a store of goods in Georgetown, furniture, and other personal property, which came to the hands of the said garnishee, and were afterwards sold and disposed of by him; leaving in his hands, from that time to the present, money and effects of the said Fitzhugh, to a very considerable amount, over and above the debt claimed by the plaintiff in the said attachment : that the said Fitzhugh was, at and before the time of the issuing and

serving of the said attachment, and still is, indebted to the plaintiff in the said sum of $1,421 30 cents. Whereupon the garnishee, in order to prove that the money and effects so being in his hands were not liable to the attachment, produced and read to the jury a paper writing, purporting to be a bill of sale from the absconding debtor to the garnishee, recorded among the land records of the proper county, on the 3d day of June, next ensuing its date, in the words following :

This Indenture, made this thirty-first day of December, in the year eighteen hundred and nineteen, between Richard H. Fitzhugh, of the one part, and William Marbury of the other part: Whereas, the said Richard H. Fitzhugh is indebted to the Farmers' and Mechanics' Bank of Georgetown, in the sum of four thousand three hundred dollars ; to the Bank of Columbia, in the sum of two thousand eight hundred and fifty dollars ; to the Union Bank of Georgetown, in the sum of fifteen hundred and fifty dollars ; and to the Branch Bank of the United States, at Washington, in the sum of seven thousand dollars, all current money ; for the payment of which, the said Fitzhugh wishes to provide, and therefore executes this deed or instrument of writing.  Now this Indenture witnesseth, that the said Richard H. Fitzhugh, for, and in consideration of the premises, and for the further consideration of five dollars, current money, to him in hand paid by the said William Marbury, the receipt of which is hereby acknowledged, hath given, granted, bargained, and sold, and by these presents doth give, grant, bargain, and sell, unto the said William Marbury, his executors and administra-

tors, all the stock of goods and merchandize now in the store, on Bridge-street, Georgetown, occupied by said Fitzhugh ; also, all the household furniture, goods, and chattels, in the house situate in First-street, in the same town, occupied by said Fitzhugh, as a dwelling-house ; also a negro woman, Maria, a negro woman named Chloe, and her children, Westly, Caroline, John, and Nancy, all of which said negroes are now in the possession of said Fitzhugh. And the said Richard H. Fitzhugh doth hereby make over, transfer, and assign to the said William Marbury, his executors, administrators, and assigns, all his books of accounts, notes, bonds, and other securities, to have, and to hold, all the said goods and merchandizes, chattels, furniture, negroes, books of accounts, notes, bonds, and securities, unto him the said William Marbury, his executors, administrators, and assigns, for ever : in trust, however, to sell the same, according to the best of his judgment and discretion ; and to pay the money thereby arising, as follows : first, to pay the expenses of such sale, and after that, to divide the same between the Banks aforesaid, in proportion to the respective amounts due them ; and if any thing remain, it is to be paid to the creditors of the said Fitzhugh, in proportion to the debts ascertained to be due them."

In witness whereof, the said Richard H. Fitzhugh hath hereunto subscribed his name, and affixed his seal, the day and year before written.

R. H. FITZHUGH.

Signed, sealed, and delivered in my presence, the word " three," being first interlined in the sixth line of the first page.                    [SEAL.]

THOMAS CORCORAN.

*District of Columbia, Washington County, viz.*

1822.

Marbury
v.
Brooks.

On this thirty-first day of December, in the year eighteen hundred and nineteen, personally appeared before me, the subscriber, a Justice of the Peace, in and for the District and County aforesaid, Richard H. Fitzhugh, party grantor within named, and acknowledged the aforegoing instrument of writing to be his act and deed.

THOMAS CORCORAN.

And after the evidence on both sides had been fully examined, the plaintiff, having offered evidence tending to prove the following facts, prayed the instruction of the Court to the jury, if the jury find from the evidence that the said Fitzhugh, being a merchant and trader at Georgetown, in the county aforesaid, had committed divers forgeries of notes, and indorsements of notes, upon which he obtained money and credit to the amount of from fourteen thousand to fifteen thousand dollars; and that he was *bona fide* indebted to the plaintiff and divers other creditors, (all of whom are interested, as attaching and general creditors, in the determination of this cause,) for goods, wares, and merchandizes, and for moneys lent and advanced, to the amount of $20,000, or upwards, over and above the said forgeries; that William Marbury, the trustee, named in the said deed, and the garnishee summoned in this cause, is the father-in-law of said Fitzhugh; and that the said Marbury, before the execution of the said deed, being desirous to screen the said Fitzhugh from disgrace and prosecution for the said forgeries, and understanding that the

said forgeries amounted only to about five or six thousand dollars, had consented to pay off the same, and take a deed of trust or mortgage from the defendant, by way of collateral security for the moneys so to be advanced by him ; and that in pursuance of that arrangement, such a deed of trust or mortgage, by way of collateral security, was actually drawn and executed ; in which was included the same identical property mentioned and conveyed in and by the deed above given in evidence ; but the said Marbury, discovering that the amount of forgeries was in fact so much greater than had been represented, and finding that he would have to pay from fourteen to fifteen thousand dollars, instead of five or six thousand dollars, in order to accomplish his first design of screening said Fitzhugh from disgrace and prosecution, refused to advance any money to take up the forged notes ; and said, " I will not ruin my family for you : now, I advise you to make your escape as soon as you can." Whereupon, the said deed, so executed as aforesaid, was cancelled and torn up, and immediately afterwards, another deed (being the same now produced) was drawn by John Marbury, a witness present at its execution : that the said deed was executed after the noon on the day on which it bears date ; and that on the night of the same day, the said Fitzhugh absconded from the District of Columbia, and was so absconding from that time, until, and at the time the attachment issued in this cause, and ever since : that the creditors, whose debts the said deed purports to secure, were wholly ignorant of the execution, and of

1822.

Marbury
v.
Brooks.

the intent to execute the same, until after the same
was executed as aforesaid ; and were not in any man-
ner privy or consenting thereto ; except that the
said William Marbury held stock as a trustee in one
of the said banks, and John Marbury, the attorney
who drew the same, was a stockholder in another of
the said banks ; that the whole of said property lay
within the county aforesaid, and would have been
subject to this attachment, but for the said convey-
ance : that the said deed includes and conveys the
whole of the property, choses in action, and estate of
every kind, in possession of said Fitzhugh, or to
which he was in any manner entitled, at the time of
executing the same : that the whole of the debts,
which the said deed purports to secure, stood upon
no other foundation than that of notes forged by the
said Fitzhugh, and passed by him as genuine to the
banks respectively mentioned in said deed, and dis-
counted by said banks for him, and the money there-
upon advanced to him, (such notes, however, being
all actually signed or endorsed by said Fitzhugh,
and he being liable for the payment thereof,) to the
respective amounts stated in said deed ; and that at
the time of the execution of the said deed, it was ex-
pected and understood, that it comprehended all the
cases in which the said Fitzhugh was involved by
means of his said forgeries, and was not intended to
comprehend any other, except as to the surplus, after
satisfying said forged paper ; and that said Fitzhugh,
the evening before the execution of the said deed,
called on C. Smith, the cashier of the Farmers' and
Mechanics' Bank, in said deed mentioned, and a

stockholder in the same, and had conversation with him relative to the said forgeries; and that the said Smith, after being informed that the said forgeries amounted to only about five or six thousand dollars, and that he thought he had property enough to pay all his debts, if judiciously managed, said to the said Fitzhugh, that he had no doubt the said Marbury would take up and pay all the said forged notes, and that nothing more would be said about it; and said Fitzhugh begged of said Smith to see said Marbury, and recommend that course to him, which said Smith promised to do the next morning: that when said Smith called for that purpose the next morning, he found said Marbury with said Fitzhugh, and the said John Marbury, Esquire, together at the office of the latter, engaged in drawing a deed: that the said William Marbury declared, in consequence of finding the forgeries amount to so much more than he expected, that he would pay nothing; and the said Smith left the office before the said deed was executed: that on the day of the execution of said deed above given in evidence, a note to which the said W. Marbury's name had been forged by Fitzhugh, and by him passed for value received to one G. R. Gaither, became due and payable at said Farmers' and Mechanics' Bank, where the same was deposited by the holder for collection, said Bank having no interest in the same: that the holder had called at the Bank, and expressly ordered the said note to be sent out and presented for payment, in order that the said Marbury might distinctly avow or disavow his signature; and to be protested if not admitted and paid; and that the said Marbury, either in the evening of the same day the

deed was executed, and after the execution of the same, or in the morning of the next day, *called at* said Bank and took up said note, after it had been sent out to the Notary, and before the return of the protest; that said Marbury, at the same time, took up another forged note and a check due to the said Bank, (both being also forgeries of the said Fitzhugh,) upon neither of which his (Marbury's) name had been forged; and the said two notes and checks were the whole of the paper forged by said Fitzhugh, which was then due and demandable; and said Marbury took up said notes and check in anticipation of funds expected to arise from the property conveyed as aforesaid; and took the receipt of C. Smith, cashier of said bank, for the amount so paid on said forged notes and check, in the words following:

" *Georgetown, January* 1, 1820.

" Received of William Marbury, twelve hundred and fifty dollars forty cents, part of the debt due the Farmers' and Mechanics' Bank of Georgetown, mentioned in the deed of R. H. Fitzhugh to the said Marbury, dated 31st December, 1819.

$1250 40.                              C. SMITH."

That the said Marbury, in a conversation, the day after the execution of said deed, relative to the said deed, and to the circumstances attending the execution of the same, expressed regret at having had any thing to do with it; represented that said Fitzhugh had come to him in tears; and entreated him to save him, or screen him from prosecution, and to have the affair hushed up, (or words to that effect;) and the said Marbury, in that conversation, expressed it as

his wish, that it might be hushed up : and the said Marbury, in the course of conversation, further remarked, that said Fitzhugh seemed scarcely to know what he was about, and would have done any thing to get away : and said Marbury further remarked in said conversation, that said Fitzhugh had a rich uncle disposed to assist him, and his father was expected in town in a few days, and that if his debts did not amount to too much, they might all yet be provided for ; that he (Marbury) did not suppose the loss, upon winding up said Fitzhugh's affairs, would exceed ten thousand dollars ; that if it did not exceed that sum, his friends would arrange the whole, and he (Marbury) himself would be willing to go as far as five thousand dollars, if Fitzhugh's other friends would answer the balance ; and the said Marbury further remarked, that if twenty thousand dollars would save him (Fitzhugh) from disgrace, he (Marbury) would pay it ; that what he had already done, was to save Fitzhugh from prosecution, he (Marbury having no interest in it ;) and that said Marbury, in another conversation, speaking of having taken up the said note due to said Gaither, said he was anxious to get the forged notes out of the way : and that after the execution of said deed, the defendant was unwilling to leave the District, and wished to remain at least a week longer ; and that the attorney who drew the said deed, being nearly connected with the parties as the son of the trustee, and brother-in-law of said Fitzhugh, persuaded and advised him to quit the District, and among other reasons, urged,

that if all the parties were satisfied to let him remain unmolested, still Mr. Richard Smith, the Cashier of the Branch Bank of the United States, (which is one of the Banks which the said deed purports to secure,) would feel himself compelled to prosecute ; and that it would be more than his office was worth to over-look it, on account of the great interest the Bank of the United States felt in prosecuting and bringing to justice persons guilty of forgery : that said William Marbury also urged said Fitzhugh to quit the District, in order to get out of the way of prosecution ; and that said Fitzhugh, in the night of the same day said deed was executed, actually fled from justice, and absconded as aforesaid, with the privity and consent of said William Marbury ; and that neither he, nor any person on the part of any of the said banks inter-ested in said deed, did ever move in the said prosecu-tion, or attempt to have the said Fitzhugh arrested and brought to justice ; and that it was known to the acting officers and agents of the said banks, before the departure of the said Fitzhugh, that he was guilty of said forgeries.

Then the jury may conclude from the said facts and evidence, that the said deed was devised and exe-cuted by the said Fitzhugh, and accepted by the said William Marbury, with the motive and intent of prevailing with the holders of the said forged notes to forego a prosecution for the said forgeries ; and also, that upon the facts so given in evidence on the part of the plaintiff as aforesaid, if believed by the jury to be true as stated, that the said deed is frau-dulent and void as against the plaintiff. Which in-

struction the Court gave as prayed. To which the defendant excepted.

And the said garnishee, having offered evidence to prove the following facts, viz: That after the execution of the said deed, the said Fitzhugh was urged by the said John and William Marbury to fly from the District; that the said Fitzhugh made great objections to going away, and wished to remain a week, and upon being told that he would be in danger of arrest and prosecution, if he did so, the said Fitzhugh replied that he could not be arrested until the meeting of the Court; but upon being satisfied that he might be called before a magistrate, and immediately arrested, and the observation before stated being made about Mr. R. Smith, and being told of the punishment to which he was exposed, he consented to go. And he further offered to prove, by the evidence of the said John Marbury, a witness sworn in the cause, that he was not certain who first proposed the drawing of the new deed; but to the best of his recollection, the proposal came from said Fitzhugh, and that said W. Marbury was requested by said Fitzhugh to become the trustee; to which he consented. That at the time of the execution of the said deed, the said Fitzhugh executed the same voluntarily, and that no expectation was held out to him, either by himself, or by Mr. W. Marbury, or any other person to the witness's knowledge, either then or at any time before, that by executing the same he would be saved from a prosecution; nor was there any promise or expectation given, that they, the said Marburys, or either of them, would endeavour to pre-

vail with the holders of the said forged notes, or any other persons, to forbear arresting or prosecuting the said Fitzhugh: and further, that neither the witness, nor W. Marbury, ever made any such application to any of the said holders, or to any other person : and further, that at the time of the execution of said deed, all expectation of preventing a prosecution, or concealing the said forgeries, was abandoned, and that the only mode pointed out to said Fitzhugh, for avoiding said prosecution, was by an immediate flight: and all the said forged notes still remain in said banks, except the two notes and the check mentioned in the statement of plaintiff's evidence ; and upon the evidence, offered as aforesaid, both on the part of plaintiff, and the garnishee, and so stated as aforesaid, the garnishee, by his counsel, prayed the Court to instruct the jury.

If the jury believe, from the evidence, that R. H. Fitzhugh, owing the debts mentioned in the deed offered in evidence, executed and delivered the same voluntarily and without any threat of prosecution, and without any promise or agreement made to him— that in case of executing it, he would not be prosecuted, then the plaintiff is not entitled to recover. But the Court refused to give the instructions as prayed by the defendant, and in lieu thereof, gave the following instructions, to wit :

If the jury believe, from the evidence, that R. H. Fitzhugh, owing the debts mentioned in the deed offered in evidence, executed and delivered the same, (voluntarily and *bona fide*,) and without any threat of prosecution, and without any promise or agreement

made to him, and without any expectation on the part of said Fitzhugh, raised by the acts of said Marbury, or of some of the persons interested in the said trust—that in case of his executing it he would not be prosecuted, and that possession of the said goods accompanied and followed the execution of the said deed, then the plaintiff is not entitled to recover. To which refusal the defendant excepted; and the plaintiff excepted to the instructions granted by the Court.

And the defendant, by his counsel, then prayed the Court to instruct the jury, that if they believed from the evidence, that the said R. H. Fitzhugh, owing the debts mentioned in the deed offered in evidence, executed and delivered the same without any persuasion or threats, and upon his own proposal, and without any understanding with any body, that by executing the same he should be saved from prosecution, and that nothing was said or done by any person for the purpose of influencing him by any such consideration to execute the same, and that the previous understanding between him and said Marbury, as to the latter paying and taking up the said forged papers was before the execution of the said deed abandoned, and that there was no understanding between the said Fitzhugh and the said Marbury, that they, or either of them, should forbear prosecuting him, or should attempt to prevail with the holders of said forged paper to forbear prosecuting him on account of the same, nor any understanding with said holders that they should so forbear, and that no attempt whatever was ever made so to prevail upon the said holders, nor in any man-

ner to prevent such prosecution ; and that said Fitz-hugh, at the time of executing such deed, asserted that he had property enough, if judiciously managed, to pay the said forged paper and all his other debts also ; and that said Marbury and the said holders of said forged notes could have instantly prosecuted the said Fitzhugh for said forgeries without violating any promise or understanding that had subsisted between them ; and that unless he had absconded as afore-said, he would have been by the said holders imme-diately prosecuted for said offences, and that such prosecution was not in any manner avoided by the execution of said deed, but only by his absconding from the District, then the jury may and ought to pre-sume, that the said deed was executed *bona fide* and for a valuable consideration ; and that the plaintiff is not entitled to recover ; which instruction the Court gave. To which opinion and direction, the plain-tiff excepted.

And thereupon the plaintiff prayed the Court to instruct the jury, that if, under all the circumstances before given in evidence, the jury shall find that the obtaining of impunity or forbearance of prosecution, for the said forgeries, formed no part of the conside-ration or inducement for the execution of the said deed, with said Fitzhugh, or with any other person, directly or indirectly concerned, still if the jury find from the evidence, that the great majority of the creditors of said Fitzhugh, in number and value, were by means of said deed unjustly and purpose-ly hindered, delayed, and defeated in their proper suits and remedies, for the recovery of their said debts, upon the absconding of said Fitzhugh, and that the

said deed was executed as aforesaid, with the purpose and design of preventing and defeating any legal recourse in behalf of such majority of creditors, against the property and effects which said Fitzhugh intended to leave behind, and did leave behind him, when he fled from justice as aforesaid ; and if it be further found that no creditor whatever of the said Fitzhugh was party or privy, or in any manner consenting to the execution of the said deed, then the said deed is fraudulent and void in law, as against the plaintiff. Which instruction the Court gave ; but also instructed the jury that the *preference* given by the said deed to some of the creditors of said Fitzhugh, did not *of itself* make the said deed fraudulent and void in law. To which also the defendant excepted.

And the defendant further prayed the Court to instruct the jury as follows :

If the jury should believe, from the evidence, that Richard H Fitzhugh, owing the debts mentioned in the deed, executed the same under an expectation that it might have prevented him from being prosecuted for the forgeries, and that neither the said William Marbury, nor any of the holders of the said forged notes, nor persons interested in the same, held out to him any such expectations, then the said deed is valid, and the plaintiff not entitled to recover. Which opinion the Court refused to give, but instructed them as follows :

If the jury should believe, from the evidence, that Richard H. Fitzhugh, owing the debts mentioned in the deed, executed the same under an expectation that it might prevent him from being prosecuted for

the forgeries, and that neither the said William Mar-
bury, nor any of the holders of the said forged notes,
nor persons interested in the same, held out to him
any such expectation, then the said deed is valid,
(unless there should be some other objection to it,)
and the plaintiff not entitled to recover.

To which refusal the defendant by his counsel
excepted : and the plaintiff also excepted to the in-
struction given by the Court.

A verdict and judgment thereon having been ren-
dered for the plaintiff, Brooks, in the Court below,
the cause was brought by writ of error to this Court.

*March* 19th.

This cause was argued by the *Attorney-Gene-
ral,* and Mr. *Key,*[a] for the plaintiff in error, and
by Mr. *Jones,*[b] for the defendant in error.

*March* 21st.

Mr. Chief Justice MARSHALL delivered the opi-
nion of the Court.

This is a writ of error to a judgment rendered in
the Circuit Court of the United States for the county
of Washington. In the Circuit Court the contro-
versy turned entirely on the validity of the deed of the
31st of Dec. 1819. The jury found against its va-
lidity, and the cause depends in this Court on the
correctness of the instructions under which the ver-
dict was found.

a They cited 1 *Johns. Cas.* 205. 2 *Johns. Ch. Rep.* 297.
4 *Wheat. Rep.* 503. 13 *Vin. Abr.* 517. *pl.* 10. 541. *pl.* 3.
*Ambl.* 596. 4 *East's. Rep.* 13. 5 *T. R.* 424. 8 *T. R.* 528.

b He cited 9 *Johns. Rep.* 337. 5 *Cranch,* 350. 6 *Mass. Rep.*
339. *Cowp.* 434. *Roberts on Frauds,* 585.

After the testimony was concluded, the plaintiff in the Circuit Court moved that Court to instruct the jury, that if they find from the evidence the facts which it was offered to prove, and which are stated at large in the bill of exceptions, " that then the jury may conclude from the said facts and evidence that the said deed was devised and executed by the said Fitzhugh, and accepted by the said William Marbury, with the motive and intent of prevailing with the holders of the said forged notes to forego a prosecution for the said forgeries; and also upon the facts so given in evidence on the part of the plaintiff as aforesaid, if believed by the jury to be true as stated, that the said deed is fraudulent and void as against the plaintiff."

This instruction the Court gave as prayed. It consists of two parts. First, that which authorizes the jury to infer " the motive and intent" with which the deed was executed ; and secondly, that which declares the deed " fraudulent and void as against the plaintiff," if the facts given in evidence by him, as stated in the bill of exceptions, are believed to be true.

This last part of the instruction may possibly have been intended to depend on the first. It may have been intended to say, that if the jury should draw the conclusion which was authorized by the Court, respecting the motive and intent with which the deed was executed, they should then find the deed fraudulent and void as against the plaintiff. But such is not the direction of the Court, as it appears in the case before us. The second clause of the instruc-

tion is entirely independent of the first, and the jury is directed to find the deed fraudulent and void, if the facts stated in the bill of exceptions are believed.

The testimony of the plaintiff would certainly justify the conclusion, respecting the motive and intent with which the deed was executed and received, that he wished the jury to draw ; and, although the instructions on this point might have been expressed in terms less exposed to cavil, we will not say that they withdraw from the jury their right of deciding for or against that conclusion. If the case rested on this branch of the opinion of the Court, we feel some difficulty in saying that it was too strongly expressed.

But the second branch of this instruction cannot, we think, be sustained.

Had the motive and intent with which the deed was executed and received been left to the jury ; and had they been instructed, " that, if they believed it to have been executed and received with the motive and intent of prevailing with the holders of the forged notes to forego a prosecution for the said forgeries, then the deed would be fraudulent and void against the plaintiff," the single question of law respecting the validity of such a deed would have been presented to this Court. But the instruction, as given, does not depend on this conclusion. It depends on their believing that the facts stated in the bill of exceptions are proved ; and they are informed that if those facts are true, the deed is void. To sustain this instruction, the facts must be such as clearly to amount to a fraud.

The first fact is, that Marbury, the father-in-law

of Fitzhugh, and the trustee in the deed, when first informed of the forgeries which had been committed, being desirous of screening his son-in-law from disgrace and from punishment, and being informed that the forged notes amounted to only 5 or 6,000 dollars, agreed to take up the notes on receiving a conveyance of property for his indemnity ; but on finding that their amount was much more considerable than he had supposed, he tore up the deed, and refused to engage himself for the notes.

This part of the transaction has been denominated a fraud. We cannot think it one. To advance money for a son-in law to repair the frauds he had committed, even with the hope of concealing the perpetration of them, is not, we think, an offence which may not be excused ; nor can a security taken for the repayment of money so advanced be deemed fraudulent. If the notes were to be taken upon condition that the holders would forbear to prosecute the criminal, or if the repayment of the money advanced were to depend upon his escape from prosecution, the validity of the contract might well be questioned. But the undertaking of Marbury was unconditional, as was the security for the repayment of the money advanced. The only feature in the transaction to which blame is attached is the attempt of a father-in-law to conceal the forgeries of a son-in-law, by paying off the notes he had forged. It may be the duty of a citizen to accuse every offender, and to proclaim every offence which comes to his knowledge ; but the law which would punish him in every case for not performing this duty is too harsh for

man. This fact certainly indicates the interest taken by Marbury in the escape of Fitzhugh, but goes no farther.

On cancelling this first deed, Marbury said to Fitzhugh, "now I advise you to make your escape as soon as you can." And immediately after it was cancelled, the deed now in contest was drawn by a person then present, which comprises all the property of Fitzhugh of every description, and purports to secure all those creditors who were then understood to be holders of the forged notes. It did not appear that the creditors, for whose particular benefit the deed was made, had any notice of the transaction ; but William Marbury, the trustee, and John Marbury, who drew the deed, were severally stock holders in two of the banks for whose debts it provided. It was also proved that the evening before the execution of the deed, Fitzhugh called on C. Smith, the cashier of one of the banks, and a stockholder in it ; and in a conversation with him respecting the forgeries, said that Marbury would pay the notes. That Smith called on Marbury next day, while the deed was preparing, but on being told that he would not pay the notes, departed before it was executed. Two of the forged notes fell due about the time, and were taken up by the trustee on the day after the deed was executed. It appeared that Fitzhugh was anxious to remain some time longer in the District, but was urged both by William Marbury and John Marbury, who was son of William, to escape immediately, as he would certainly be prosecuted by the Bank of the United States if he remained ; and that he did abscond the

night succeeding the execution of the deed. It appeared, from the declarations of Marbury himself, that his object, throughout the whole transaction, was to save Fitzhugh from prosecution.

It is sufficiently obvious that Marbury acted as the friend and adviser of Fitzhugh, and in the hope that, if the notes should be taken up, the creditor banks would not pursue him out of the District. It is stated that they have not instituted any prosecution against him, but it is not stated that it has been in their power to do so, or that they know where he is.

Do these facts, of themselves, avoid the deed?

That a debtor has a right to prefer one creditor to another cannot be denied, and that his private motives for giving this preference, provided the preferred creditor has done nothing improper, cannot annul this right, is equally certain. On the other hand, it will be also admitted that any unlawful consideration moving from the preferred creditor to induce this preference, may avoid the deed which gives it. Had Mr. Marbury acted as the agent of the banks holding the forged notes, or with their knowledge and concurrence, had they been in any manner pledged not to prosecute Fitzhugh should the notes be taken up, either before or after the deed was executed, and while it was in the power of Marbury to withhold from them the money produced by the property conveyed, the case would be a strong one against the banks. But there is no ingredient of this sort in the case; at least, none is submitted to the jury. The fact, in its strongest aspect, is, that a deed was made, giving this preference, in the hope that it would propi-

1822.

Marbury
v.
Brooks.

tiate the preferred creditors, and prevent their being so active as they might otherwise be in proceeding against the criminal. B, t the facts, as they stand, show no agreement made at any time to forbear to prosecute, nor that the interest of the creditors would be in any manner affected by the institution of a prosecution, and carrying it on to the *conviction of* the offender.

If Fitzhugh had remained, and his crime had not been discovered, he might have sold all the property comprized in this deed, and might have applied the money to the notes he had counterfeited. His hope that this act would conceal the crime, and save him from punishment, would not have vitiated the transaction.

Had he, on determining to abscond, executed to Mr. Marbury the very deed now in question, conveying all his property in trust for the creditors who are preferred in that deed, and afterwards for other creditors, without any previous communication with any person whatever, would such conveyance have been distinguishable from an absolute sale ? Would the hope in his own bosom, that such conveyance might have the effect of exempting him from a prosecution, unaccompanied by any act of the favoured creditors giving countenance to such hope, avoid the deed ?

The consideration moving from the creditor, would be a real debt, and consequently, a valuable and fair consideration. It would not be tainted by any secret hope working in the mind of the maker

of the deed. It would not be the less fair on account of that hope. We think that the validity of such a deed could not be drawn into question.

The only circumstance which can create any doubt in this case, is, that the father-in-law of the maker of the deed, the man who took a strong interest in his escaping prosecution, and who advised his flight, is made the trustee. How far ought this circumstance to affect the preferred creditors?

There are cases in which notice to a trustee may affect the *cestui que trust,* and in which the acts of a trustee may be considered as the acts of the *cestui que trust*; but we are not prepared to say that this is one of those cases. Mr. Marbury was not a trustee selected for this purpose by the Bank. They were entirely ignorant of all that was passing between him and Fitzhugh. He was not then agent in obtaining the deed. He was not empowered to act for them, or to make any representations in their name, or to bind them in any manner whatever. He is the agent of Fitzhugh to sell his property and pay his debts in the order prescribed by himself. He had a right to prescribe this order, and the secret hopes of himself, or his agent, cannot affect those who never did any act to inspire those hopes.

This deed is absolute on its face, and there is no allegation that its effect was to depend on any subsequent agreement of the banks for the suppression of the prosecution. There is no evidence of any communication between the banks and Marbury before the deed was recorded and irrevocable. Sup-

1822.

Marbury
v.
Brooks.

pose Marbury had applied to the banks, the deed not being delivered as an escrow, and had told them that unless they would consent to suppress the prosecution, he would not allow them to take any benefit from the deed, would his attempt to deprive them of its benefits be supported in law? We think it would not. Suppose Marbury had in consequence of the actual institution of a prosecution against Fitzhugh, refused to act under the deed. Would not a Court of Chancery have decreed him to execute the trust, or have appointed some other trustee to execute it? It certainly would.

It is then the opinion of the Court, that, even supposing the deed to have been executed in the hope and expectation that it would operate as a suppression of the prosecution, the favoured creditors having done nothing to excite that hope, and being entirely ignorant of the transaction, ought not to be affected by it.

But that this was the motive to the deed, though highly probable, is not certain. Fitzhugh might have been impelled by other considerations to give these particular creditors the preference. The Court was not, we think, at liberty to say that the deed was void, in consequence of any motive which the Court might impute to its maker. The motive was a fact of which the jury was to judge.

There are in the case some facts, which seem to be introduced for the purpose of raising a suspicion that the banks might have had notice of the forgeries before the execution of the deed, and of the transactions between Fitzhugh and Marbury. But

the cause was not put on this point, nor do any of the instructions given by the Court, refer to it. There is no allusion to notice to all the banks, and the deed would not be void, on account of notice to one, so far as respected others.

There are several opinions given by the Court, which are dependent on this single principle : That the communications between Fitzhugh and Marbury, though unknown to the banks, avoid the deed. The cause, so far as it is now before the Court, essentially depends on this single principle. This Court is of opinion, that in this, the Circuit Court erred, and that the deed is not void, unless Marbury acted with the concurrence or knowledge of the banks, or unless they assented to it under some engagement, express or implied, to suppress the prosecution.

Judgment reversed, and a *venire de novo* awarded.