Tucker, P.
The original bill in this case states that upon the intended marriage of the appellee Bonner with Susanna W. Atkinson, it was agreed that a provision should be made out of her estate for her half sister, who afterwards intermarried with the complainant Brown. The sum fixed upon was 2200 dollars, and the personal estate of the intended bride was ample for its payment. In this bill the transaction is considered as having amounted to a gift, and as having operated to intercept the marital rights of the appellee. This view of the case was, I think, obviously incorrect; and as the evidence afterwards taken abundantly shews, it did not present the rights of the female complainant in their proper aspect. An amended bill was afterwards filed, in which it is stated, in strict conformity with the facts as proved by the depositions taken anteriour to its exhibition, that “ after it had been agreed between the intended husband and wife that a sum of money should be given to and settled upon miss Tatum (now mrs. Brown), the appellee, at miss Atkinson’s request, had an instrument of writing prepared to carry the intended settlement into effect, and brought it in blank to miss Atkinson, who did not execute it for some supposed informality; whereupon Bonner the intended husband said to his intended wife, that he would have an instrument *6 drawn by a lawyer which would answer the intended purpose, and afterwards produced the.instrument now deemed incompetent to bind him, which was executed accordingly.” These allegations are-beyond controversy, because the. bill has • been taken for confessed against the appellee.
Upon these facts, I cannot hesitate about the conclusion to be drawn in that tribunal which considers that as done which ought to have been done, — which holds itself bound to rectify mistakes, — and which looks upon fraud with no grains of allowance. I can have no doubt that the benevolence of the deceased sister must be effectuated in favour of the survivor, and that the appellee is justly chargeable with the payment.
It'is objected’however, in the first place, that it does not appear that- the design was that the money was to be paid to miss Tatum out of the personalty of 'her sister, and that the intent to provide for her might as effectually have been executed by a covenant binding her heirs, and thus charging.her realty. Such, in my view, was obviously not the design of the parties. An engagement to make a provision in money would naturally refer itself to the personalty, in the absence of positive evidence,’ even if the circumstances did not strongly prove that the personalty was looked to. But when we take’into view that miss Atkinson had a large sum in the hands of her guardian, besides a personal estáte of fóurór.five thousand dollars which Bonner received after the-marriage; when we see him procuring, an instru-ment to be dráwri, having not the remotest reference to the realty, and not even binding the heirs for payment; when we see him also, during the coverture, making advances in part of this gift, which áre not pretended to have been raised out of the realty, and which he does not even now seek to charge upon it; credulity itself cannot believe that the real estate was looked to by the parties as the fund from which payment was to be made.
*7 Taking then the agreement to be that 2200 dollars should be given to and settled upon miss Tatum out of her sister’s personalty, and that the intended husband i,, • iii undertook to have an instrument drawn by a lawyer which should answer the intended purpose, but in fact produced, and had executed, an instrument of writing wholly inadequate to the purpose; there can be no doubt, I think, that such agreement should now be set up against the husband.
Piad the husband fraudulently procured a defective instrument, knowing it to be such, and in the confidence and agitation of the moment procured its execution, to the prejudice of the half sister, no language could have been too strong in denouncing his iniquity. It is not believed that he could have done so. Yet it was justly said in the argument, that the fraud is not less great to endeavour now to take advantage of his own blunder and mistake, however innocent. No principle is in equity better established than this, that though there may have been no fraud in the original transaction, yet the attempt to enforce it may become a fraud. Where one is not even originally party to the transaction, yet if it was cllected through fraud, he becomes a party to the fraud by seeking to have advantage of it. Such was the case of Huguenin v. Baseley, 14 Ves. 273. and Marbury v. Brooks, 7 Wheat. 556. And surely the case is not less strong of one through whose mistake another has been severely injured, and himself in an equal degree benefited, and who afterwards seeks to avail himself of that mistake to the prejudice of his adversary.
Had the transaction originated in fraud, there can be no doubt that the appellee would be chargeable. In the ordinary case of an estate suffered to descend, the owner being informed by the heir that if the estate is permitted to descend he will make provision for a third person, there is no doubt the court of equity would compel the heir to discover whether he did make the *8 promise, notwithstanding the statute of frauds, and would force him to comply with it, notwithstanding the third party is a volunteer. See Strickland v. Aldridge, 9 Ves. 519. Luttrel v. Olmius, quoted and approved in Mestaer v. Gillespie, 11 Ves. 638. 2 Freeman 34, 285. Chamberlain v. Agar, 2 Ves. & Beames 262. In the case of Luttrel v. Olmius, the party claiming was a volunteer, and yet he had relief. Why ? Because he was not seeking relief against the giver, whom a court of equity will not compel to part with his property upon a naked promise without consideration, but because he sought it against a party who received the property upon the express consideration of applying it to his use.* Who ever heard of a trustee setting up against his cestui que trust the defence that the latter was a volunteer ? It cannot be; because although the cestui que trust may be a volunteer, there is a sufficient consideration to justify a decree against the trustee. So in the case of Luttrel v. Olmius, though the claimant was a volunteer, yet as the tenant in tail could not in conscience take advantage of the iniquitous act, the obligation of conscience stood in lieu of a consideration, and the estate was considered precisely as if the act had been done which ought to have been done. And so here, though miss Tatum, is a volunteer, and could not have filed a bill against her sister to rectify the settlement, she may well maintain her demand against Bonner, to whom his wife *9 had given her whole personalty by marriage, upon the consideration of his agreeing to make a valid settlement upon the sister. I consider that settlement as if duly made, and the appellee of course as bound for the balance of the sum remaining unpaid; and am therefore of opinion to reverse the decree and send the cause back for further proceedings.
Decree reversed, and cause remanded for further proceedings.

 Note by the president. The doctrine that equity will not enforce an executory contract in favour of a volunteer, rests upon the obvious principle that no court can compel a man to give away his property, and if the contract does not amount to a gift, it will not be converted into one. And so if the contract be incomplete ; for if it be so, the gift is not perfect, and no court has power to make it so. But where A. gives property to B. for the use of C. or in consideration that B. shall pay to C. a certain sum, the gift is complete from A. the owner, and it is in equity as much a gift to C. pro tanto, as it is to B. for the residue, and though C. is a volunteer as to A. yet there is a good consideration for a demand of payment from B. as to whom he is no volunteer.