JEREMIAH HATCH AND ELIZABETH LAING, AS EXECUTORS OF THOMAS LAING, DECEASED, RESPONDENTS, *v.* XENOPHON W. COLLINS, APPELLANT.

*Compounding a felony — when a contract made to induce creditors not to prosecute is not illegal.*

One Moncrief transferred certain articles of personal property belonging to him and which were situated in the State of Vermont, to one Laing, his father-in-law, in consideration of the promise of the latter to pay his, Moncrief's debts. The amount of the debts exceeded the value of the property. Some of the debts which Laing agreed to pay were represented by notes which had been forged by Moncrief, and Laing was induced to make the contract by feelings of compassion and kindness for him, and in the hope that if the notes were paid a prosecution for the crime would be less likely to take place. There was no agreement that the notes should be destroyed or any evidence withheld, nor that any creditor should refrain from prosecuting him. No prosecution had been commenced or threatened:

*Held*, that the creditors of Moncrief could not impeach the validity of the transfer upon the ground that it was void, as made with intent to compound a felony

*Marbury* v. *Brooks* (7 Wheat., 556); *Ward* v. *Allen* (2 Metc., 53), followed; *Laing* v. *McCall* (50 Vt., 658), not followed.

APPEAL from a judgment in favor of the plaintiffs, entered upon the report of a referee. The action was brought to recover dam-

ages for the conversion of one evaporator and 400 sap buckets. The plaintiffs claimed title thereto under a bill of sale thereof from William T. Moncrief to their testator. The defendant sought to justify the taking and sale of the property under an attachment against said Moncrief.

*John H. McFarland,* for the appellant.

*Frank H. Graham,* for the respondents.

LANDON, J.:

The verbal agreement on the 18th day of June, 1876, between Moncrief and the plaintiffs' testator for the sale of the personal property in question was not effectual to pass title to the property. The property exceeded fifty dollars in value, no writing was made, no delivery, no *payment at the time.* (*Hunter* v. *Wetsell,* 57 N. Y., 375; S. C. 84 id., 549.) It was a mere verbal proposition and acceptance thereof, to be thereafter executed, if neither party withdrew, but not then executed nor closed. Payment on the subsequent day, by the plaintiffs' testator to third parties, pursuant to the previous arrangement, but in the absence of the vendor and without his then concurrence, upon the basis of the arrangement of the previous day, did not make the sale effectual, for *non constat* that he had not changed his mind; and also payment on a subsequent day is not payment at the time of making the contract. (Cases above cited.)

This verbal contract was made in the State of New York, and if invalid by the *lex loci contractus,* it is invalid everywhere. (2 Kent, 458; *Hyde* v. *Goodnow,* 3 N. Y., 266.) But on June twenty-first Moncrief executed and delivered to the plaintiffs' testator a bill of sale of the property. This was in the town of Rupert, in the State of Vermont. The bill of sale was filed the next day in the town clerk's office of said town. The personal property in question consisted of "utensils and apparatus for the manufacture of maple sugar," and was kept on a farm belonging to plaintiffs' testator in Rupert, Vermont, which farm was occupied by Moncrief, who was his son-in-law. Moncrief, so far as he was able to do so, delivered possession of the property to the plaintiffs' testator on the twenty-first day of June. But the property at that

time was held by the sheriff of the county of Bennington, in the State of Vermont, under certain attachments against Moncrief, and although the property remained upon Moncrief's farm, such proceedings had been taken under the attachments as enabled the sheriff, in the language of the Vermont statute and by virtue thereof, " as effectually to hold such property against all subsequent sales, attachments or executions, as if such property had actually been removed and taken into the possession of such officer."

The title acquired by the plaintiffs' testator, on the twenty-first day of June, by virtue of the bill of sale, was Moncrief's title subject to the existing liens under the attachments. If the property had been disposed of under these attachments, the plaintiffs' testator would have had nothing remaining.

The defendant Collins obtained his attachment under which he justifies and placed the same in the sheriff's hands, on the twenty-second day of June. If the foregoing views are correct, Moncrief's interest in the property had already passed to the plaintiff's testator. But the defendant says the property, being in the hands of the sheriff, was *in custodia legis;* that such custody was so exclusive as to preclude the possibility of Moncrief making any transfer thereof to the plaintiff's testator, and, therefore, when the defendant's attachment came to the sheriff's hands, it became a lien upon the property subject only to the prior attachments, and without possibility of detriment from any intervening right under the bill of sale.

It was proved, however, as a fact that, by the law of Vermont, when property is so attached and then sold by the attachment debtor, that notice of such sale to the sheriff holding the attachment, of the claim of the vendee, is to the extent of his interest equivalent to a physical change of possession, the latter not being attainable under the circumstances. (*Marshall* v. *Town,* 28 Vt., 14 ; *Wooley* v. *Edson,* 35 id., 214.) Such notice was given to the sheriff before the defendant's attachment was levied.

According to the law of the State of New York, notwithstanding a levy, the judgment debtor remains owner and may sell the property subject to the execution lien. (*Mumper* v. *Rushmore,* 79 N. Y., 19.) The Vermont statute evidently favors the same rule. The title of Laing was superior to the lien of the defendant's attachment under which the property was sold.

The defendant however claims that Laing acquired title by virtue of a contract entered into with Moncrief for the purpose of stifling a criminal prosecution against Moncrief, and therefore his title was void against *bona fide* creditors of Moncrief. The referee refused to find that there was any legal evidence that any of the notes paid by Laing, in consideration of the bill of sale to him, were forged. We have examined the case and there was evidence sufficient to require the finding that some of the notes which Laing, in consideration of the bill of sale to him, agreed to pay and did pay were forged, and that the inducement which led him to make the contract was a feeling of compassion and kindness for Moncrief, and especially for Laing's daughter, who was Moncrief's wife, and the hope that if the notes were paid a prosecution for the crime would be less likely to take place, but there was no agreement that Laing or any creditor should refrain from prosecution, or that the notes should be destroyed, or any evidence withheld. No prosecution had been commenced or threatened. The amount paid by Laing exceeded the value of the property transferred by the bill of sale, and no motive of gain induced him to enter into the contract. In *Ward* v. *Allen* (2 Metcalf, 53), it was held that in order to make a promise void on the ground that the consideration thereof was the stifling of a criminal prosecution, it is necessary that the promise should be made for gain, and not merely from motives of kindness and compassion. In *Laing* v. *McCall* (50 Vt., 658), a case arising in Vermont out of this transaction, it was held that the jury ought to have been instructed that if any part of the inducement moving the plaintiff to the execution of the contract was, that, by taking up said notes Moncrief would be less liable to be arrested for forgery, then the contract was void as to *bona fide* creditors of Moncrief. The court rested the decision upon the proposition " that the intent to do a criminal act and to carry out an illegal purpose, vitiates the whole transaction." The proposition is undoubtedly correct and the contract void if there was an intent to accomplish an illegal act by means of the transaction. The case is much like *Marbury* v. *Brooks* (7 Wheat., 556 ; again reported 11 id., 78). In that case one Fitzhugh had forged many notes. Marbury was his father-in-law. Fitzhugh had forged Marbury's name upon several of the

notes.   The notes were about due and disclosure imminent and prosecution probable.   Fitzhugh executed an assignment to Marbury of all his property in trust for his creditors, preferring the payment of these forged notes.   The assigned property being insufficient to pay Fitzhugh's general creditors in addition to the forged notes, the plaintiffs, being such creditors, attached the property in the hands of Marbury, the assignee.   The evidence tended to show that the object of the assignment on the part of both the assignor and assignee, was to provide for the forged notes, to the end that Fitzhugh would therefore be less liable to be punished, and in the hope that he would not ; but there was no agreement of that kind with any of the holders of the notes, and they were not parties to the transaction, otherwise than by being benefited by it in receiving their pay.   The assignment was upheld against the attaching creditors.   MARSHALL, C. J., in delivering the opinion of the court (7 Wheat., 575), said : " To advance money for a son-in-law to repair the frauds he had committed, even with the hope of concealing the perpetration of them, is not, we think, an offense which may not be excused; nor can a security taken for the repayment of money so advanced be deemed fraudulent.   If the notes were to be taken, upon condition that the holders would forbear to prosecute the criminal, or if the repayment of the money advanced were to depend upon his escape from prosecution, the validity of the contract might well be questioned. But the undertaking of Marbury was unconditional, as was the security for the repayment of the money advanced.   *   *   *   It may be the duty of a citizen to accuse every offender and to proclaim every offense which comes to his knowledge ; but the law which would punish him in every case for not performing this duty is too harsh for man."

In the case under review the plaintiff's testator became the assignee of Moncrief's property in consideration of his verbal promise to pay his debts.   The promise was unconditional and inured to the benefit of every creditor.   The transfer was in like manner absolute and unconditional.   Both acted solely upon the mere hope that by the payment of the notes prosecution would be arrested.   The cases cited hold that they might lawfully so act, if they did nothing upon the express or implied condition that the

prosecution should be suppressed, averted or trammelled. Laing, the assignee, did for Moncrief what the latter might lawfully have done for himself — apply his property to the payment of his debts. Moncrief might convert it into money and thus pay them. He did, by this transaction, in effect convert it into money and pay them; not by his own hand, but by the hand of Laing. The fact that Laing knew why he wanted to pay his debts, and purchased his property to help him do it, only makes him a participator in the lawful, not in the unlawful, acts of Moncrief.

In 11 Wheaton, 88, the chief justice further remarks : " It cannot be questioned that Fitzhugh might have sold his property and paid the proceeds to the banks, and that such sale and payment would not have been vitiated by any expectation he had formed that it might save him from a prosecution. Had he communicated this expectation to the purchaser, told him the use he intended to make of the money and that his motive for preferring the holders of these forged notes to other creditors, was the hope that, on receiving payment, they might be less active in the prosecution, would this have rendered the sale a nullity? We cannot conceive that such a communication would have affected the transaction." We are cited to the case in Vermont not as evidence, but as authority. We are, therefore, at liberty to follow the authority of the cases in the United States Supreme Court and in Massachusetts as an exposition of the law which we think should govern the case.

It follows that the judgment should be affirmed.

LEARNED, P. J., and BOCKES, J., concurred.

Judgment affirmed, with costs.