Mir Justice James
delivered the opinion of the Court:
On the 7th of July, 1886, the complainants, recovered judgment in this court against the defendant Hollander for the sum of $1,000, with interest, at the rate of seven per cent, per annum, from the 15th day of February, 1886, upon which execution was issued and returned nulla bona. On the 15th of June, 1886, Hollander, who had for several years been engaged in the clothing business in the city of Washington, made a deed of assignment to the defendant Bieber of all his property, excepting his household furniture, but including all the stock in trade, fixtures, etc., upon the premises known as No. 1217 Pennsylvania avenue. At *78 the same time Hollander was further indebted to the complainants, for goods purchased on the 2d, 7th and 15th of April, 1886, to the amount of $1,846.50; and the complainants held his note for $1,000, dated February 15th, 1886, payable five months after date, with interest at the rate of seven per cent, per annum until paid.
The bill prays for discovery by the defendant Hollander, concerning certain matters, and for the appointment of a receiver, and asks that in final hearing the deed of assignment to Bieber shall be declared fraudulent and void as against the plaintiffs, and decreed to be cancelled; and that out of the proceeds of the sale of the goods the amount found due to the plaintiffs be ordered to be paid.
It appears that all of the indebtedness of Hollander to the complainants was for goods sold to him by them.
The evidence satisfies us that at the time of his purchases from the complainants in' 1886, the defendant Hollander had only about three thousand dollars worth of stock, and was indebted for more than six times that amount. In that condition of his affairs he made new purchases to the amount of $19,791.71 as stated at the argument by his counsel, or to the amount of $21,085.54 as claimed by counsel for complainants. It is shown that his experience in making sales had determined the fact that he had no ground to expect, and could not have expected to sell during that season so much as one-half of the goods newly purchased by him. Without going into details, we think it enough to say that we are satisfied that he must have contemplated, at the time of his purchase from complainants in 1886, the use of the goods, or of a large part of the goods so purchased, in applying them by assignment for the benefit of the preferred creditors afterwards actually named in the deed referred to. We do not mean to say that a fraudulent purchase of goods renders a subsequent assignment of them for the- benefit of other creditors fraudulent as against the defrauded vendors; but we conceive that such a fraudulent purchase and subsequent assignment may be so connected by the pur *79 chaser and assignor as to constitute one transaction, and thus make the assignment a fraud, intended from the beginning to affect the defrauded vendor. The transaction before us appears to us to be of that character. We are of the opinion, that Hollander made his purchases in the spring of 1886 with the intention, if it should become necessary, to apply them in satisfaction of preferred creditors. This, we hold, made such an assignment a fraud on the vendors of those goods.
It does not appear, however, that either the assignee or the preferred creditors knew anything' about the circumstances of these purchases. In other words, it does not appear that they participated in any fraud connected with the assignment. We have to deal, therefore, with the disputed question, whether an assignment for the benefit of preferred creditors may be held to be void when it was the intent of the assignor to thereby defraud his other creditors, although the creditors provided for in the deed were not participants in that intent.
On this question there is some conflict in the decisions of the state courts and in the conclusions of the text-books. Mr. Burrill states that it is immaterial whethei the assignee or the creditors participate in the fraudulent intent of the assignor. Mr. Waite says: “ Generally speaking the subject of inquiry in these cases is the intent of the assignor or debtor, though there is authority tending to establish the rule, that the fraudulent purpose sufficient to defeat the instrument must be participated in by the assignee or beneficiaries * * * Recognizing the general rule, elsewhere discussed, that a voluntary conveyance or gift may be annulled at the instigation of creditors without proof of an absolute fraudulent intent on the part of the donee, it would seem to follow by analogy that the cases, which hold that proof that the fraudulent intent of the debtor or assignor, is sufficient, establish the more logical and salutary rule.” On the other hand, Mr. Bump, citing almost identically the same authorities, reaches an opposite conclusion.
*80 In Cadogan vs. Kennett, Cowp., 434, Lord Mansfield said: “ The principles and rules of the common law, as now universally known and understood, are so strong in every shape, that the common law would have attained every end proposed by the statutes of 13 Eliz. Ch. 5 and 27 Eliz. Ch. 4.” However this may be, it has been considered important in almost every State in this country to re-enact those statutes substantially. In the process of condensation new phraseology has in some cases been used, and it has been suggested that this has to some extent led to the conflict referred to. In this District, however, the statute of 13 Eliz. Ch. 5, is in force in the original form by transmission from Maryland. Sexton vs. Wheaton, 8 Wheat., 242. For reasons which will be explained later in this opinion, we shall first consider the particular question before us as one of principle.
The provisions of the statute are substantially as follows: “ For the avoiding and abolishing of feigned, covinous and fraudulent feoffments, gifts, grants, alienations, conveyances * * * as well of lands and tenements as of goods and chattels * * * which feoffments, gifts, etc., have been and are devised and contrived of malice, fraud, covin, collusion or guile, to the ynd, purpose and intent to delay, hinder or defraud creditors and others of their just and lawful actions, suits, debts, etc.
“ Be it therefore enacted, that all and every feoffment * * * alienation, bargain and conveyance of lands * * * goods and chattels * * * to and for any intent or purpose before declared and expressed shall be from henceforth deemed and taken (only as against that person * * * whose actions, suits, etc., by such fraudulent devises as aforesaid, are, shall or might be in any wise * * * hindered, delayed or defeated) to be * * * utterly void and of no effect.
“ And be it further enacted, that all and every the parties to such fraudulent feoffment, gift, etc., being privy and knowing of the same or any of them, which * * * shall, wittingly and willingly put in use, maintain, etc., as true and *81 done bona fide and upon good consideration; or shall alien or assign any of the things before mentioned, to him or them conveyed as is aforesaid * * * shall incur the penalty and forfeiture of,'etc.
“ Provided also, and be it further enacted, that this act or anything therein contained shall not extend to any estate or interest in lands * * * goods or chattels had, conveyed or assigned * * * which estate or interest is or shall be, upon good consideration and bona fide, lawfully conveyed or assigned to any person not having at the time of such conveyance or assurance, to them made, any manner of notice or knowledge of such covin, fraud or collusion, as aforesaid.”
Stated in brief terms, these provisions declare that every alienation of real or personal property made to the end and intent of hindering, delaying or defrauding the creditors of the alienor, shall be of no effect as an alienation, except when such alienation is made to an innocent purchaser for a valuable consideration.
The statute contains a plain affirmance of what was already a principle of the common law, namely, that it is a right of the creditor that the debtor’s means of payment should be applied to the satisfaction of his debt. Although this is only a right to have an action for the enforcement of such application, it is such a relation to the property itself that a fraudulent disposition thereof is an immediate and direct injury to the creditor. 'His right controls the debtor.
It is only an application of this principle to say that, for the prevention of any fraud on him, the creditor’s right is superior not only to the debtor’s right,'but to that of any third person who takes the debtor’s place in such a way that he acquires no separate right of his own, by which he has no new or better claim to immunity. If such third person does no act which originates in him a better right than that of the debtor, the law regards him as having the same status. In that case his innocence of any fraudulent intent will not protect him. The question is simply one of the *82 status. In short, he is treated as simply not having become a new owner. But when a third person does some act or gives something in exchange for the debtor’s property, he acquires an original right to it, provided he has acted properly in undertaking to become owner at all. It is then for the first time that any inquiry into the propriety of his conduct arises, and the question to be considered is, whether, under all the circumstances, he had a right, as against the creditor, to become owner of what the debtor should have applied to the payment of his debt. This elementary principle is formulated by saying that he must appear to have become owner in the usual manner, that is to say, by purchase for value exchanged for the property in good faith and without notice of any reason why he should not acquire it. On principle, then, a third person who merely takes the debt- or’s status assumes that status subject to whatever impaired the debtor’s capacity, and it is not helped by his own innocence of any fraud in fact, and on principle his own innocence will protect him in the other cases.
This principle we conceive explains the meaning of the statute of 13 Eliz. Ch. 5, and shows that participation in the fraud of the alienor becomes a test question as to the rights of the alienee only when the latter is a purchaser for a valuable consideration. To apply this test then, the question in cases of general assignment for the benefit of creditors is, whether the assignee or the creditors can properly be considered purchasers for valuable consideration.
As a matter of fact this test has been applied in all of the well considered State decisions, and in the commercial States it has been held that the creditor does not become such a purchaser by means of the trust. In Griffin vs. Marquardt, 17 N. Y., 30, the Court of Appeals of New York said: “An assignee in trust for the benefit of creditors is not a purchaser for a valuable consideration, however innocent he may be of participation in the fraud intended by the assignor. The uprightness of his intentions, therefore, will not uphold the instrument, if it would otherwise, for any reason, be *83 adjudged fraudulent and void.” In Knowles vs. Lord, 4 Whart, 500 (506,7), the Supreme Court of Pennsylvania, speaking through Seargeant, J., said: “ Neither the assignee nor creditors, in any sense of the word, purchased these goods — they were assigned in common with all the estate of the assignors; the assignors alone prescribing the terms of the assignment, the methods of appropriation, the subsequent sale of the property by the assignees to raise the funds, and the persons who were to participate in them, as well as the order and conditions according to which they were to be distributed. * * * It would be a solecism to call such a transaction a sale or such a grantee a purchaser, or to apply these terms to the creditors.
“Such a conveyance cannot be called a sale, or such creditor a purchaser. * * * A real purchaser giving value for property in the course of business innocently, and acting on the faith of possession and other apparent marks of ownership, is favored for the support of trade and encouragement of fair dealing, and may sometimes obtain a better title than his vendor. But a voluntary assignment by. a debtor has never been considered as placing the assignee in any better situation in point of equity than the assignor himself was; he takes the estate subject to all outstanding equities, liens, incumbrances and dealings between the assignor and others.”
We have quoted this case at some length because it demonstrates clearly the principle on which assignees and creditors are denied the protection given by the fourth section of the statute 13 Eliz. It has been said that the payment of debt constitutes a valuable consideration; this case points out that something must be given up in exchange to constitute the alienee a purchaser within the meaning of the statute.
It is worth while to observe that the later decisions in some of the States which adopted the doctrine that an assignment for the benefit of creditors could be held void only when the creditors participated in the fraudulent intent *84 of the assignor, indicate that a different conclusion would be reached if that question were still open. In the Governor vs. Campbell, 17. Ala., 566 (571), Davgan, C. J., who delivered the opinion of the court, said: “The fifth charge was, that if I. M. Frión intended to delay, hinder and defraud his creditors but the trustees and preferred creditors did not join in that intent, the deed was valid. If the question raised by this charge could be considered as an open one in this court, I should willingly hold that the court erred, for the fraudulent intent of the grantor must render the deed void as against creditors intended to be defrauded by it, unless the grantee can place himself on a ground or in a condition not to be affected by the fraud, and I know of no condition that such a grantee can assume to avoid the effect of the fraudulent intent of the grantor, unless it be that of a bona fide purchaser for a valuable consideration without notice. But we are satisfied that the previous decisions of this court settle the question, that the fraudulent intent of the grantor alone in a deed of trust cannot affect the rights of the creditors intended to be secured by it unless they have participated in that intent.”
And in Hunt vs. Weimer, 39 Ark., 70, 75, the court used this language: “Perhaps the rule which requires the grantee to participate in the fraud, in order to avoid the deed (a deed of assignment) has no just application, except in case of purchasers, or persons who have parted with some valuable right.”
It is claimed, however, on the part of the defendants, that the Supreme Court of the United States has settled the rule, that in all cases of assignment for the benefit of creditors, the participation of the creditors in the assignor’s fraudulent intent must be shown, in order to avoid the assignment. We have therefore to explain carefully the effect of the decisions referred to.
In the case of Clements vs. Berry, 11 How., 398, it appeared that a deed of trust for the benefit of preferred creditors had been made by Berry in immediate anticipation *85 of a judgment against him, from which the plaintiff was bmitted. Mr. Justice McLean, speaking for the majority of the court said: “The trustee in this case cannot be considered a purchaser, as the assignment was made to him, not on purchase for a valuable consideration, but for the benefit of certain creditors.” We refer to this not as an adjudication of this question, but as evidence that the previous decisions in the cases of Marbury vs. Brooks, 7 Wheat., 556, and Brooks vs. Marbury, 11 Wheat., 78, were not then understood by the Supreme Court to have gone on the ground that an assignment for the benefit -of creditors operated to make either the assignee or the creditors purchasers for a valuable consideration.
Those decisions, however, have since been said to have held that in attacking an assignment for the benefit of creditors, it is always necessary to show fraud on the part of the creditors as well as on the part of the assignor. This construction involves an assumption that those cases also held that the creditors were purchasers under the assignment. We think the court plainly distinguished creditors as not purchasers by operation of the statute. In 7 Wheat., 579, Ch. J. Marshall described the assignee as “the agent of Fitzhugh (the assignor) to sell his property and pay his debts in the order prescribed by himself.” That case recognized the creditors simply as creditors. Again, in 11 Wheat., 87, Brooks vs. Marbury, the same learned judge said: “He is the trustee or agent of Fitzhugh (assignor) to perform an act for him which his situation disabled him from performing in person. This, act was. entirely consistent with law, as it was to sell his property and apply the proceeds to the payment of creditors of a particular description in the first instance, and, afterwards, to creditors generally. His right to give the preference is not questioned, nor is the validity of the consideration, so far as it moved from the creditors, infected with any vicious principle.” In speaking of the debt furnishing a consideration, the court was occupied in both of these cases in showing that there was valid con *86 sideration for the arrangement to apply “ the proceeds to the payment ” of the banks. That the banks became purchasers of the matters assigned with a view to this payment was an unnecessary hypothesis, and was not indicated by anything said in those case's.
Nevertheless, it is claimed that the Supreme Court has held in a later case that the doctrine of those two cases was that no assignment for the benefit of creditors can be held void on the ground that it was made in fraud of creditors unless creditors appear to be participant in the fraud of the assignor.
In Emerson vs. Senter, 118 U. S., 3, the case under review was governed by the construction given to the statute of Arkansas by the courts of that State. The court announced that such must be the law of the case. After referring to the decisions of the Supreme Court of Arkansas, according to which a general assignment for the benefit of creditors could not be held void unless it should appear that the creditors participated in the fraudulent intent of the assignor, Mr. Justice Harlan added, “The rule announced by the Supreme Court of Arkansas is in harmony with the settled doctrines of this court and accords with sound reason. Marbury vs. Brooks, 7 Wheat., 556, 577; Brooks vs. Marbury, 11 Wheat., 78, 89; Tompkins vs. Wheeler, 16 Pet., 106, 118.”
The question, how far and in what cases we are bound, as an inferior court, to apply an observation, made in a decision of the Supreme Court, as a controlling authority on the point stated, may be embarrassing. Undoubtedly it is our duty to take the law from that court; but whether we must understand that the Supreme Court intended deliberately to adjudicate the matter stated by it is a different question. According to a long line of decisions, the Supreme Court in reviewing decisions concerning the effect of an assignment for the benefit of creditors, “accepts the conclusions of the highest judicial tribunal of the State as controlling.” Peters vs. Bain, 133 U. S., 686. By the rule of *87 that court itself, therefore, the only guide which could be followed in Emerson vs. Senter was the decisions of the highest judicial tribunal of Arkansas. What that court intended to determine in the Brooks and Marbury cases was not presented for adjudication. Nor do we understand that such observations as we have referred to are stated with the purpose of laying down a rule which must be followed by the inferior courts. In view of this distinction, and with the highest respect for every suggestion from the source of this opinion, we are compelled to decline to accept as authoritative the observation that the Brooks and Marbury cases establish the doctrine, that, in all cases of assignment for the benefit of creditors, it is necessary to show that the preferred creditors participated in the fraudulent intent of the assignor, before the transfer can be held void. In those cases it was distinctly held, in the first place, that preference of certain creditors did not show a fraudulent intent even on the part of the assignor; and it was held, in the second place, that a private hope to thereby escape prosecution for a felony did not impair the assignor’s right to make the preference, and therefore did not constitute the fraudulent intent which would affect the validity of the transfer. In the next place, the court held that it was only when more than a hope of escape existed; in other words, only when there •was an understanding that the assignor should actually escape prosecution, that any fraud of this particular kind could exist. The whole scope of those decisions was that the particular fraud imputed could not exist unilaterally, and could only exist by express or implied contract between the assignor and the creditors. The court was not called upon to decide, and did not decide whether an actual intent on the part of the assignor was sufficient to invalidate the assignment. Having held that a private hope of escape did not constitute a disabling fact on the part of the assignor, the court could not well decide whether an actual fraud on his part alone would be sufficient to avoid' his act.
We are of opinion, then, that the Supreme Court has not *88 decided that the creditors are to be regarded as purchasers for a valuable consideration under, an assignment for their benefit, nor that it must appear that they were participant in the fraudulent intent of the assignor in making such assignment. Therefore, being satisfied that the assignment in this case was made with intent on the part of the assignors to defraud the plaintiffs, we hold that it was void as to them, notwithstanding the preferred creditors were not participant in that fraud. .